# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

JOSEPH LEE GILMORE,

          Defendant-Appellant.

UNPUBLISHED
February 10, 2015

No. 318592
Wayne Circuit Court
LC No. 12-004304-FC

Before: FORT HOOD, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), three counts of unlawful imprisonment, MCL 750.349b, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. He was sentenced, as a fourth habitual offender, to 270 to 750 months' imprisonment for each armed robbery conviction, 110 to 240 months' imprisonment for his first-degree home invasion conviction, 70 to 180 months' imprisonment for each unlawful imprisonment conviction, 30 to 60 months' imprisonment for his felon in possession of a firearm conviction, and five years' imprisonment for his felony-firearm conviction. We affirm.

## I. REQUEST FOR ADJOURNMENT

First, defendant argues that the trial court abused its discretion and violated his right to a fair trial when it denied his request for a one-day adjournment in order to secure the presence of two witnesses.[1] We disagree. This Court reviews a trial court's decision to grant or deny an adjournment for an abuse of discretion, *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000), which "occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes," *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

---

[1] Defendant also raised this issue in his Standard 4 brief.

-1-

A motion for an adjournment must be based on good cause. MCR 2.503(B)(1); *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). Factors that a court may consider in determining whether a defendant demonstrated good cause "include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Coy*, 258 Mich App at 18 (internal quotation marks and citation omitted). Defendant must also demonstrate prejudice resulting from the trial court's denial of the adjournment. *Id*. at 18-19; *Snider*, 239 Mich App at 421.

Defendant's request to adjourn was based on the absence of two officers that responded to the crime scene, Marcie Passalacqua and Gilda Mason. Defendant's purpose in obtaining Passalacqua's and Mason's testimony was to establish that the victims were unable to identify defendant immediately following the crime.[2] We hold that the trial court did not abuse its discretion in denying defendant's request to adjourn. First, defendant has not established good cause because his negligence in securing the witnesses for trial resulted in the request to adjourn. *Coy*, 258 Mich App at 18-19. The prosecution's witness list was filed well before trial, and did not include Passalacqua or Mason as witnesses. Despite this, defendant did not subpoena Passalacqua or Mason as witnesses before trial, apparently assuming the prosecutor would subpoena the witnesses. It appears that defendant made no attempt to ensure the officers' presence before the first day of trial.[3] While the trial court and the prosecution made efforts to locate the witnesses after trial began, they were unsuccessful, leading to defendant's request to adjourn on the third day of trial. Defendant's delayed efforts to secure the witnesses necessitated the request for adjournment. We further note that approximately two weeks before trial, the trial court granted defendant's motion to remove his attorney. At that time, the trial court clearly stated that no adjournments would be granted for discovery issues. Defense counsel acknowledged on the record that she had received defendant's file from defendant's former attorney, which included discovery from the prosecution. Based on these facts, we do not agree that there was good cause to adjourn.

---

[2] We note that that defendant erroneously characterizes officers Passalacqua and Mason as res gestae witnesses. A res gestae witness is someone who "witness[ed] some event in the continuum of the criminal transaction and [whose] testimony would . . . aid[] in developing a full disclosure of the facts at trial." *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001). Passalacqua and Mason did not witness an "event in the continuum of a criminal transaction" because they arrived at the scene to investigate the crime after the entire criminal transaction was completed. *Id*.

[3] We note that defendant's belated requests for the assistance of the prosecutor and police were in contradiction of MCL 767.40a(5), which provides: "The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness. The request for assistance shall be made in writing by defendant or defense counsel not less than 10 days before the trial of the case or at such other time as the court directs."

Further, defendant has not shown he was prejudiced by the trial court's denial of his request to adjourn. Prejudice occurs when "the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Following the denial of the request to adjourn, the trial court deemed Passalacqua unavailable, and allowed her former testimony to be read to the jury. Defendant asserts that he was prejudiced because the jury did not have an opportunity to assess Passalacqua's credibility and demeanor, and because defense counsel indicated that she would have questioned Passalacqua differently or impeached Passalacqua more thoroughly if Passalacqua had testified in person at trial. However, defendant points to nothing substantial or significant that was missing from Passalacqua's former testimony that was read to the jury. Moreover, defendant's assertions that his first trial resulted in a hung jury merely because Passalacqua testified in person are speculative and founded on conjecture. In regard to Mason, defendant has not shown that her testimony would be anything other than cumulative of Passalacqua. Accordingly, defendant was not prejudiced and the trial court did not abuse its discretion in denying his motion to adjourn.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence presented at trial to establish his identity as a perpetrator of the offenses.[4] We disagree. Challenges to the sufficiency of the evidence are reviewed de novo to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (citation omitted). All evidence is reviewed in the light most favorable to the prosecution, *id.*, and "[a]ll conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Defendant asserts that there was insufficient evidence presented at trial to establish his identity beyond a reasonable doubt. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Therefore, it is axiomatic that the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt. See *Russell*, 297 Mich App at 721. "The credibility of identification testimony is a question for the trier of fact . . . ." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

At trial, the victims, Frank Graham and Italiya Anderson, identified defendant as one of the perpetrators. Although Graham never visibly observed defendant in the home during the robbery, Graham stated that he recognized defendant's voice based on previous conversations that he had with defendant during the three or four years that he had known him through their landlord-tenant relationship. In response to a question from the jury, Graham confirmed that he was "one hundred percent sure that it was [defendant's] voice" that he heard because he had talked to him "plenty of times." Anderson, who had known defendant for eight or nine years, testified that she saw defendant in the house during the incident, specifically noticing his Cartier glasses and light skin. She also recognized defendant's voice when he spoke with the other

---

[4] Defendant also raised this issue in his Standard 4 brief.

perpetrators, asked Anderson where the money was located in the house, and instructed one of the perpetrators to check on a dog in the basement. Further, Graham testified that defendant threatened him by phone while defendant was in prison, and he identified defendant's voice on the recording of the phone call, which was admitted at trial. Thus, Graham's and Anderson's testimony provided sufficient evidence for a reasonable jury to conclude that defendant was one of the perpetrators of the offenses.

Defendant identifies a number of circumstances that purportedly undermined the credibility of the witnesses' identification of him, i.e., the witnesses did not identify defendant as a perpetrator during the 911 call made immediately following the incident; the witnesses did not identify defendant when Passalacqua and Mason responded to the scene; the witnesses identified defendant for the first time 12 hours after the incident; defendant's mouth was covered by a mask during the incident, which is inconsistent with Graham's and Anderson's assertion that they clearly recognized his voice; no physical evidence was collected from the scene; and the witnesses' testimony was impeached at trial. Based on these circumstances, defendant asserts that the prosecution did not present any reliable evidence of his identity. However, the question of identification testimony is a question for the trier of fact, and this Court will not interfere with the jury's role of determining the weight of evidence or the credibility of the witnesses. *Id.* at 700; *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). Therefore, viewed in the light most favorable to the prosecution, Graham's and Anderson's testimony identifying defendant as a perpetrator provided sufficient evidence for a reasonable jury to find beyond a reasonable doubt that defendant committed the offenses.

## III. JURY'S REQUEST TO REVIEW TESTIMONY

Third, in his Standard 4 brief, defendant argues that the trial court abused its discretion when it denied the jury's request to review Passalacqua's testimony from his first trial. We disagree. This Court reviews for an abuse of discretion a trial court's decision regarding whether to allow a deliberating jury to review a witness's testimony. MCR 2.513(P); *People v Davis*, 216 Mich App 47, 56; 549 NW2d 1 (1996).

With regard to a jury's request to review testimony or evidence, MCR 2.513 provides:

If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. . . . The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed. [MCR 2.513(P).]

After receiving the jury's request[5] to review Passalacqua's testimony, the trial court initially stated, "I'm going to instruct you to rely upon your collective memory with regard to [Passalacqua's] testimony." Defendant objected, and the court amended its instruction before the jury returned to its deliberations in accordance with defense counsel's objection.[6] The court provided the following amended instruction:

> With regard to your question can we see Officer [Passalacqua's] testimony, what I'm going to request of the jury is that you rely upon your collective memory. However, if at some point and time that's not sufficient enough for you, you can send a note out requesting that the [c]ourt read that testimony back to you, okay? But try first with regard to your collective memory, alright.

It is clear that the trial court's instruction complied with the court rule, as the trial court expressly stated that the jurors could request to rehear the testimony if relying on their collective memories was not sufficient and, therefore, did not foreclose the opportunity to review the testimony at a later time. MCR 2.513(P). Accordingly, the trial court did not abuse its discretion.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Fourth, in his Standard 4 brief, defendant argues that defense counsel provided ineffective assistance of counsel based on three separate grounds. We disagree. To preserve a claim of ineffective assistance of counsel, a defendant must make a motion for a new trial or an evidentiary hearing with the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant never moved for a new trial or a *Ginther*[7] hearing in the trial court. When an ineffective assistance of counsel claim is unpreserved, "this Court's review is limited to mistakes apparent from the record." *Id.* at 80.

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that,

---

[5] Defendant asserts that the jury requested to review Passalacqua's testimony twice. However, the record reveals that while the jury technically submitted two requests to review Passalacqua's testimony, the second request was submitted before the trial court had an opportunity to address the first request due to defense counsel's absence from the courtroom. Thus, the trial court's response addressed both requests, and no further requests from the jury were received in regard to Passalacqua's testimony.

[6] The basis of defense counsel's objection was "that the [c]ourt should have instructed them to use their collective memory, but if they required it upon after [sic], after careful reviewing it that the court would, in fact, provide them with the information that they need."

[7] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

First, defendant asserts that he received ineffective assistance of counsel due to defense counsel's failure to interview and subpoena Passalacqua and Mason before the first day of trial. "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses . . . ," meaning defenses that may have affected the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Defense counsel's choices "regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which this Court will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (internal quotation marks and citation omitted). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id*.

Given defense counsel's duty to prepare and investigate all substantial defenses, *Chapo*, 283 Mich App at 371, defense counsel's failure to interview Mason and Passalacqua and subpoena them before trial arguably fell below an objective standard of reasonableness. *Nix*, 301 Mich App at 207. It is clear that defense counsel's failure to subpoena the witnesses was not a matter of trial strategy, *Dixon*, 263 Mich App at 398, because defense counsel expressly admitted that she did not realize that the officers had not been subpoenaed until the weekend before trial began, even though she accepted defendant's case and received the previous attorney's file 13 days before trial. However, defendant has not shown that he was prejudiced by his counsel's failure to call the witnesses. *Nix*, 301 Mich App at 207. As discussed, Passalacqua's former testimony was read to the jury, which established defendant's lack of identification defense and contradicted Anderson's testimony that she was tied up during the incident. Thus, defendant was not deprived of a substantial defense. *Dixon*, 263 Mich App at 398. Additionally, defendant has not demonstrated that defense counsel's lack of preparation otherwise prejudiced defendant. Accordingly, defendant has failed to establish that defense counsel's failures constituted ineffective assistance of counsel.

Second, defendant asserts that he received ineffective assistance of counsel based on defense counsel's failure to review a recording of a phone conversation between Graham and defendant, which the prosecution admitted at trial as motive evidence. However, our review of the record revealed that while defense counsel stated that she had not heard the specific recording that the prosecutor was offering as evidence, she had listened to the actual content before trial on a different recording. Further, even assuming defense counsel failed to review the recording before trial, defendant has not established that he was prejudiced by defense counsel's purported error. *Nix*, 301 Mich App at 207. On appeal, defendant does not describe the content of the recording or explain how the recording resulted in, or contributed to, the outcome of the trial. Thus, defendant has not demonstrated that defense counsel provided ineffective assistance of counsel on this basis.

Third, defendant asserts that he received ineffective assistance of counsel by his counsel's failure to object to the trial court's denial of the jury's request to review Passalacqua's former testimony during its deliberations. Contrary to defendant's claim, it appears that defense counsel did object to the initial instruction provided by the court. Nevertheless, as established above, the trial court's response to the jury's request was proper under MCR 2.513(P), so any

objection to the trial court's instruction would have been meritless. "Defense counsel is not required to advocate a meritless position." *Snider*, 239 Mich App at 425. Therefore, we hold that defendant was not denied the effective assistance of counsel.

## V. PROSECUTORIAL MISCONDUCT

Fifth, in his Standard 4 brief, defendant argues he was denied a fair trial based on three separate claims of prosecutorial misconduct. We disagree. A defendant's claim of prosecutorial misconduct must be met with a contemporaneous objection and a request to the trial court for a curative jury instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object at trial to any of the alleged instances of prosecutorial misconduct. Accordingly, the issue is unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). In addition, reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476.

First, defendant argues that the prosecutor knowingly presented, and failed to correct, perjured testimony. A defendant's due process rights are violated when his conviction is "obtained through the knowing use of perjured testimony." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "[A] prosecutor has an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). Additionally, reversal is not necessary when the prosecutor does not attempt to conceal contradictions in a witness's testimony, and defense counsel is afforded a sufficient opportunity to impeach the witness's credibility with his or her prior statements. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998).

There is no indication that the prosecutor knowingly presented or failed to correct perjured testimony. Defendant provides no evidence that Graham and Anderson provided false testimony or that the prosecution knowingly offered false testimony apart from his identification of contradictions and possible inaccuracies (e.g., whether Anderson initially called 911 from her own cell phone or another number) in Graham's and Anderson's statements at various points throughout the investigation and trial proceedings. These inconsistencies do not establish that the prosecutor *knowingly* used perjured testimony to obtain defendant's conviction, as the prosecution is not required to doubt a witness's testimony merely because there is other contradictory testimony. *People v Lester*, 232 Mich App 262, 278; 591 NW2d 267 (1998), overruled in part on other grounds by *People v Chenault*, 495 Mich 142 (2014). There is also no indication that the prosecutor attempted to conceal inconsistencies or inaccuracies in the witnesses' testimony, and defense counsel extensively cross-examined Graham and Anderson with their previous statements. *Parker*, 230 Mich App at 690. Further, inconsistencies in the witnesses' testimony are issues of weight of the evidence and witness credibility, which are questions for the jury, *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005), and do not necessarily demonstrate perjury. Thus, defendant has not established that the prosecutor violated his due process rights by offering, and failing to correct, perjured testimony at trial.

Defendant also asserts that the prosecutor failed to disclose the logs of the 911 calls that were made following the incident, which constituted evidence favorable to defendant because the

-7-

logs do not indicate that defendant was identified as a perpetrator by name or description. However, the prosecution's purported failure to disclose the call logs occurred during defendant's first trial, and defendant acquired the logs by subpoena and used them as evidence during his second trial. Thus, even if the prosecutor did deliberately suppress the 911 call logs, it is clear that the error did not affect the outcome of defendant's second trial and, therefore, does not constitute plain error.

Finally, defendant asserts that the prosecution failed to preserve the original recordings of the 911 calls made after the incident and other physical evidence from the crime scene. In order to justify reversal based on a claim that the prosecutor violated his due process rights by failing to preserve evidence, the defendant must prove that (1) the missing evidence was exculpatory, or that (2) law enforcement personnel acted in bad faith. *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). To establish that the police violated his right to the due process of law by "fail[ing] to preserve *potentially useful* evidence," the defendant must demonstrate that the police acted with bad faith. *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988) (emphasis added); see also *Hanks*, 276 Mich App at 95 (stating same).

The failure to preserve the 911 call recordings did not affect defendant's substantial rights. Defendant asserts that the calls were exculpatory, based on the content of the 911 call logs, because they would have demonstrated that Anderson failed to identify defendant as a perpetrator during the 911 calls, contrary to her testimony at trial. However, this does not prove that the 911 call recordings were exculpatory since it is apparent from the very brief descriptions in the 911 call logs that the logs are not full transcriptions and do not include everything said by a caller. *Hanks*, 276 Mich App at 95. However, even if the 911 call recordings may have been potentially more useful to defendant than the 911 logs, the admission of the 911 call logs at trial provided evidence in support of defendant's lack of identification defense because the description of the perpetrators did not include defendant's name, which defendant recognizes in his Standard 4 brief. Additionally, defendant does not provide any evidence that the prosecution or the police acted in bad faith by failing to preserve the original recordings of the 911 calls made after the incident. Instead, he only offers conclusory assertions of bad faith based on the mere fact that the 911 recordings were not preserved and the fact that the 911 call logs do not include an identification of defendant. The officer in charge's testimony further supports the conclusion that the police did not act in bad faith. The destruction of the recordings after 90 days was consistent with departmental policy given the number of calls received by the department and the fact that defendant was not apprehended until approximately five months after the offense. Thus, defendant has failed to establish that the failure to preserve the 911 call recordings violated his substantial rights by affecting the outcome of the trial.

Likewise, the prosecution did not plainly err by failing to send an evidence technician to the crime scene and failing to collect fingerprints or other physical evidence involved in the commission of the crime. Defendant appears to confuse a failure to *preserve* evidence with a failure to search for or seek out evidence. The parties do not dispute that an evidence technician was not sent to the crime scene, the house was not tested for fingerprints, and no physical evidence—such as the sheet and extension cords mentioned by Graham and Anderson—was collected from the scene. Contrary to defendant's suggestion on appeal that the prosecution had a duty to collect fingerprint evidence or other physical evidence that could have been exculpatory, "neither the prosecution nor the defense has an affirmative duty to search for

evidence to aid in the other's case." *Coy*, 258 Mich App at 21; see also *People v Burwick*, 450 Mich 281, 289 n 10; 537 NW2d 813 (1995) (stating same). Likewise, "the prosecutor and the police are not required to test evidence to accord a defendant due process," and due process does not "require that the prosecution seek and find exculpatory evidence." *Coy*, 258 Mich App at 21. Further, even if it would have been prudent to further investigate the crime scene by testing for fingerprints or collecting the sheet and extension cords, there is no indication that the police acted in bad faith by failing to collect and preserve this evidence. *Youngblood*, 488 US at 58. Instead, Evans explained that he did not send an evidence technician to the scene when the case was assigned to him because "[f]rom [his] knowledge there was nothing to collect," and he had not been told that there was anything that had been touched from which he could collect fingerprints. Thus, given that the potential evidence identified by defendant was never in the possession of the prosecution or law enforcement officers, there is no merit to defendant's claim that the prosecution failed to *preserve* this evidence. Accordingly, the prosecution did not commit a plain error that affected defendant's substantial rights by failing to collect fingerprints or other evidence from the residence.

## VI.  SENTENCING GUIDELINES SCORING

Finally, in his Standard 4 brief, defendant argues that the trial court erred in scoring PRV 4, PRV 5, OV 2, and OV 7. We disagree.

When reviewing a scoring issue, the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The court's application of the facts to the statutory scoring conditions is a question of statutory interpretation that is reviewed de novo on appeal. *Id.* However, defendant's challenges to PRV 4, PRV 5, and OV 2 are unpreserved because defendant did not object to the trial court's scoring of these variables at sentencing, file a motion for resentencing, or file a motion to remand. MCL 769.34(10); *People v Loper*, 299 Mich App 451, 456; 830 NW2d 836 (2013). "[T]his Court may review an unpreserved scoring issue for plain error affecting substantial rights." *Loper*, 299 Mich App at 457.

First, the trial court did not plainly err in assessing 10 points for PRV 4. PRV 4 is scored when the defendant has "prior low severity juvenile adjudications." MCL 777.54(1). 10 points shall be assessed if "[t]he offender has 3 or 4 prior low severity juvenile convictions." MCL 777.54(1)(c). Additionally, there is a 10-year limit on the previous adjudications that may be considered in scoring PRV 4 under MCL 777.50(1), which provides, "[i]n scoring prior record variables 1 to 5, do not use any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication."

The juvenile history listed in the presentence investigation report (PSIR) indicates that the trial court properly assessed 10 points for PRV 4. Defendant's most recent juvenile adjudication was possession of less than 25 grams of a controlled substance and was discharged on October 17, 2003, which was less than 10 years before the commission date of the sentencing offense. Defendant's next most recent juvenile adjudications were unlawful use of a motor vehicle, discharged in 2002, and receiving and concealing $1,000 or more in stolen property, discharged in 2001. Because the discharge date of each juvenile offense occurred within 10

years of the commission date of each subsequent offense, defendant's juvenile history includes three offenses that meet the statutory requirements for PRV 4 listed in MCL 777.54 and do not include any 10-year gaps pursuant to MCL 777.50. See *People v Billings*, 283 Mich App 538, 552; 770 NW2d 893 (2009) ("[T]he issue is . . . whether, starting with the present offense, there was ever a gap of 10 or more years between a discharge date and a subsequent commission date that would cut off the remainder of his prior convictions or juvenile adjudications."). Therefore, the trial court did not err in assessing 10 points for PRV 4.

In regard to PRV 5, defendant waived appellate review at the sentencing hearing. "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's actions will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). At sentencing, the prosecution and defense counsel agreed that the trial court should assess 10 points for PRV 5, and the trial court assessed 10 points for PRV 5 in light of the parties' agreement. Thus, defendant has waived this issue. Moreover, this error would not change defendant's minimum sentence range, and resentencing is not required if the error does not alter the recommended minimum range. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).[8]

Third, the trial court properly assessed 15 points for OV 2. OV 2 is scored based on the "lethal potential of the weapon possessed or used." MCL 777.32(1). Pursuant to MCL 777.32(1), 15 points shall be assessed if the offender possessed a fully automatic weapon. MCL 777.32(1)(b). In a multiple offender case, "if 1 offender is assessed points for possessing a weapon, all offenders shall be assessed the same number of points." MCL 777.32(2). Here, multiple perpetrators committed the armed robbery and defendant was convicted under an aiding and abetting theory, even though the other perpetrators were not tried with defendant. Graham testified that one of the perpetrators held an AK-47 rifle, a fully automatic weapon, to his head during the commission of the armed robbery and, at the same time, defendant stated that the men should shoot Graham if he tried to move. Thus, the trial court properly assessed 15 points based on the other perpetrator's possession of an AK-47 rifle given that all offenders must be assessed the same number of points for OV 2 in multiple offender cases. MCL 777.32(2).

---

[8] Defendant also argues that the first offense listed on the PSIR was improperly considered in the scoring of PRV 4 and PRV 5, as the charge was dismissed with prejudice. However, there is no indication that the disputed offense was considered by the trial court, and we do not agree that it justifies resentencing. To the extent that defendant is asserting that there is an error in his PSIR, defendant failed to preserve this issue since he did not raise the issue before or at the sentencing hearing, or as soon as the inaccuracy reasonably could have been discovered. MCR 6.429(C); *People v Bailey*, 218 Mich App 645, 647; 554 NW2d 391 (1996). Further, he waived this issue by personally confirming with the court that there were no "additions, deletions, corrections, or factual changes" that he wished to make to the PSIR. *Carines*, 460 Mich at 762 n 7; *Loper*, 299 Mich App at 472. Thus, defendant is not entitled to any relief based on a purported inaccuracy in the PSIR.

Finally, the trial court properly assessed 50 points for OV 7. The statutory basis of OV 7 is MCL 777.37, which provides for an assessment of points when the offense involves "aggravated physical abuse." MCL 777.37(1). The trial court may only score OV 7 for crimes against a person. MCL 777.22(1). Fifty points shall be assessed if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). In regard to conduct designed to substantially increase the fear and anxiety a victim suffered during the offense, our Supreme Court has explained that the relevant inquiry is "whether the defendant engaged in conduct beyond the minimum necessary to commit the offense" and "whether the conduct was intended to make [the] victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443-444. "[E]vidence which satisfies an element of an offense need not be disregarded solely for that reason." *Id*. at 443.

At sentencing, the trial court assessed 50 points for OV 7 based on the following reasoning:

> I think that the fact that the conduct designed to substantially increase the fear and anxiety of victims suffered [sic] during the offense by placing . . . a sheet or a pillow case over the victim's head and then telling him that he was going to kill him if they moved. That, that is conduct designed to substantially increase the fear and anxiety [that] a victim would suffer during the offense.

Defendant asserts, first, that the trial court erred in attributing the other perpetrator's actions to defendant. Specifically, defendant points out that another perpetrator placed a sheet or pillow case over Graham's head, not defendant. Defendant further asserts that his conduct, telling another perpetrator to kill defendant if he moved, did not constitute anything more than the elements of armed robbery. We disagree.

In regard to defendant's first assertion, that the conduct referenced by the trial court was not committed by defendant but by another perpetrator, defendant relies on *People v Hunt*, where this Court held that, "For OV 7, only the defendant's actual participation should be scored." *People v Hunt*, 290 Mich App 317, 323-326; 810 NW2d 588 (2010). However, the current case is distinguishable from *Hunt*. In *Hunt*, the Court held that "while [the] defendant was present and armed during the commission of the crime here, he did not himself commit, take part in, or encourage others to commit acts" justifying a score of 50 points under OV 7. *Id*. at 325-326. Here, in contrast, defendant encouraged the other perpetrators in their actions. After the sheet was put on Graham's head, defendant told the other perpetrators to shoot him if he moved. Graham's testimony reveals that, even if defendant did not himself put the sheet over Graham's head, defendant was actively present, participating, and encouraging the events which the trial court found constituted "conduct designed to substantially increase the fear and anxiety a victim suffered." MCL 777.37(1)(a).

Moreover, other evidence not mentioned by the trial court similarly supports a score of 50 points under OV 7. The other victim, Anderson, testified that defendant and another man entered a bedroom where Anderson and her infant child were located. Anderson was pushed on to the bed, with her head facing down on the mattress. One of the men pointed a gun at the infant, and told her that he would kill the baby if she moved. The perpetrators then tied up

-11-

Anderson's legs with an extension cord, and when Anderson attempted to kick off the extension, cord, one of the men pointed a gun at her, and defendant "climbed on top of [her] with [her] body positioned in between his legs," asked her where the money was located, and stated, "They got a dog in the basement[;] go get the dog in the basement." In this instance, defendant and the other perpetrators jointly took efforts to terrorize Anderson, threatening not only her life, but the life of her child and dog. Moreover, defendant personally climbed on top of Anderson when she attempted to resist. We conclude that these actions were designed to substantially increase Anderson's fear and anxiety, and justified a score of 50 points under OV 7.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Michael F. Gadola