## PEOPLE v LONG

Docket No. 219691. Submitted March 16, 2001, at Detroit. Decided April 27, 2001. Approved for publication July 3, 2001, at 9:00 A.M.

Christian Long was convicted by a jury in the Oakland Circuit Court, Barry L. Howard, J., of first-degree premeditated murder, first-degree felony murder, attempted murder by means not constituting the crime of assault with intent to murder, arson of a dwelling house, assault with intent to rob while unarmed, and unlawfully driving away an automobile (UDAA). The defendant was sentenced as a fourth-offense habitual offender to concurrent terms of life imprisonment without parole for the convictions of first-degree murder and attempted murder, thirteen to twenty years for the arson conviction, ten to fifteen years for the assault conviction, and three to five years for the UDAA conviction. The convictions arose out of the beating and strangling of Pramukh Patel in the home of his daughter and son-in-law, Ajay Sharma, by an assailant who also tied up Sharma, set fire to Sharma's house, took Sharma's possessions, and drove off in Sharma's automobile. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err in finding that the prosecution exercised due diligence in providing law enforcement assistance in the defense's unsuccessful efforts to procure the decedent's girlfriend as a defense witness. Because the decedent's girlfriend was not a res gestae witness, the prosecution's obligation under MCL 767.40a with respect to the girlfriend was to provide law enforcement assistance in the defense's production of the girlfriend. The record indicates that the prosecution provided such assistance.

2. The trial court did not err in not giving sua sponte the "missing witness" jury instruction, CJI 5.12, with respect to the decedent's girlfriend. The instruction was inapplicable because the prosecution was not responsible for her appearance at trial.

3. The defendant's claim that some of the prosecutor's comments during opening statement and closing argument deprived him of a fair trial is without merit. The opening statement comments regarding the nature of the beating and the injuries to the decedent comported with the evidence presented at trial. The closing argument

comment that it was fortunate that the decedent's daughter did not discover the attacker was made in the context of a recitation of facts proved by the prosecutor. The remarks concerning police efforts and investigative techniques involved proper commentary on the evidence presented. To the extent that the challenged remarks could be viewed as improper, any prejudice was cured by the trial court's instruction to the jurors that they should not let sympathy or prejudice influence their judgment and that the lawyers' comments were not evidence.

4. The two convictions of first-degree murder arising out of one death violate the constitutional prohibition against double jeopardy. The proper remedy is a remand for a modification of the judgment of conviction and sentence to specify a single conviction and sentence for first-degree murder supported by two theories: premeditated murder and felony murder.

5. Sufficient evidence was presented to support the defendant's conviction of attempted murder by means not constituting the crime of assault with intent to murder. The evidence established that the defendant attempted to murder Sharma by tying him up and setting his house on fire.

6. The trial court was not authorized to impose a sentence of life imprisonment without parole for the conviction of attempted murder. On remand, the trial court must modify the judgment of sentence to reflect a parolable life term for the conviction of attempted murder.

Affirmed in part and remanded.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, and *Rae Ann Ruddy*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gary L. Rogers*), for the defendant on appeal.

Before: MARKEY, P.J., and JANSEN and ZAHRA, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of first-degree premeditated murder, MCL 750.316, first-degree felony murder, MCL 750.316, attempted murder, MCL 750.91, arson of a dwelling house, MCL 750.72, assault with intent to rob while

unarmed, MCL 750.88, and unlawfully driving away an automobile (UDAA), MCL 750.413. He was subsequently sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of life imprisonment without parole for the two first-degree murder and attempted murder convictions, thirteen to twenty years for the arson conviction, ten to fifteen years for the assault conviction, and three to five years for the UDAA conviction. He appeals as of right. We affirm in part and remand for modification of the judgment of sentence.

This case arises out of the September 18, 1998, murder of Pramukh Patel at the home of his son-in-law Ajay Sharma in the city of Troy. Sharma arrived home from work at about 11:15 A.M. and discovered that Patel had been beaten and strangled to death and that an assailant was in the process of taking items from the home. The assailant subdued Sharma, tied him up, and set fire to the house. Sharma was ultimately able to get himself free, put out the fire, and call the police. Sharma testified that his wallet, watch, wedding ring, and other items put into a duffel bag and garbage bag were taken and put into Sharma's Ford Explorer. Sharma was never able to positively identify the assailant.

The police later found Sharma's Ford Explorer in the city of Detroit. The police were also able to determine that defendant's brother's (Justin Long) vehicle was involved in the abandonment of the Ford Explorer. Further, the police traced a call made from Sharma's stolen cellular phone to Justin Long. The police then executed a search warrant of Nicholas Long, also defendant's brother, and found several items taken from Sharma's home. Other physical evi-

dence also linked defendant to the crime. Blood samples taken from the murder scene matched defendant's blood type and a DNA analysis matched defendant's DNA profile. Defendant's fingerprints were found on a tube of surgical lubricant found at the scene, an iron found in Sharma's Ford Explorer, and a glass found at the decedent's apartment. Defendant's partial palm print also was found on a bottle cap at the scene.

I

Defendant first argues that the trial court erred in finding that the prosecution exercised due diligence in attempting to procure the decedent's girlfriend, Keneatha Howard, as a witness at trial to testify concerning her relationship with the decedent and the decedent's character traits, including his possible trait of violence.

The prosecutor must include the names of all known res gestae witnesses on the witness list attached to the information and all known witnesses who might be called at trial. MCL 767.40a(1). Howard was clearly not a res gestae witness inasmuch as she did not witness some event in the continuum of the criminal transaction and her testimony would not have aided in developing a full disclosure of the facts at trial. *People v O'Quinn*, 185 Mich App 40, 44; 460 NW2d 264 (1990). Further, Howard was not listed as a witness on the prosecution's witness list. Thus, the prosecution's burden under MCL 767.40a is to give initial and continuing notice of all known res gestae witnesses, identify witnesses the prosecutor intends to produce, and provide law enforcement assistance to investigate and produce witnesses the defense re-

quests. *People v Burwick*, 450 Mich 281, 289; 537 NW2d 813 (1995).

Here, the prosecution clearly provided law enforcement assistance to produce Howard, a witness requested by defendant. Initially, Howard contacted Troy police after learning of Patel's death and she asked to give a statement. A police report was made regarding her statement to the police and the report was provided to defense counsel. According to Sergeant Barry Whiteside, one of the interviewers, he informed Howard that her presence was required in court on April 2, 1999, when defense counsel requested her presence. Howard provided Detective Zimmerman, another interviewer, with her pager number. Howard did call the court and indicated that she would not appear at trial. Sgt. Whiteside attempted to contact her the following day, but Howard did not respond. Sgt. Whiteside and another detective went to Howard's last known address, but she did not answer. The police officers then went to Howard's last known place of employment and learned that she no longer worked there. Further messages were left for Howard, but none were returned.

Under these circumstances, the prosecution clearly gave reasonable assistance to defendant to locate Howard. MCL 767.40a(5). Therefore, the trial court's finding of due diligence went well beyond the statutory requirement and there is no error with respect to the trial court's ruling.

Similarly, defendant's claim that the trial court should have given sua sponte the "missing witness" instruction, CJI 5.12, is without merit. Because the trial appearance of Howard was not the prosecution's

responsibility, *Burwick, supra* at 290-291, 297, the instruction was inapplicable to the facts of the case and, therefore, the trial court committed no error in not giving the missing witness instruction.

II

Defendant next argues that the prosecutor's comments during opening statement and closing argument deprived him of his right to a fair trial. None of the now challenged remarks were objected to at trial; therefore, review is generally precluded unless a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

Our review of the record reveals that none of the challenged comments rise to the level of error. The challenged comments during the prosecutor's opening statement regarding the nature of the beating and the injuries to the decedent comported with the evidence presented at trial, which indicated that the decedent was severely beaten and then strangled in his daughter's home. Also, the comment during closing argument, that it was fortunate that the decedent's daughter did not discover the attacker, was made in the context of a recitation of the facts proved by the prosecutor. Therefore, these comments were supported by the evidence. Cf. *id.* at 686. Further, the remarks concerning the police efforts and investigative techniques were not an attempt to vouch for the police officers' testimony on the basis of some special knowledge, but involved proper commentary on the evidence to be presented concerning the use of telephone triangulation to locate a stolen cell phone that

was used to lead the police to defendant. Cf. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995).

Additionally, to the extent that any of the challenged remarks could be viewed as improper, the trial court's instructions that the jurors should not let sympathy or prejudice influence their judgment and that the lawyers' comments were not evidence was sufficient to cure any prejudice. *Id.* at 281. Therefore, this issue does not warrant reversal.

III

Defendant also argues that his two convictions of first-degree premeditated murder and first-degree felony murder arising out of the death of a single victim violates the constitutional prohibition against double jeopardy. We agree, as does the prosecution. The proper remedy is to modify the judgment of conviction and sentence to specify a single conviction of first-degree murder supported by two theories: premeditated murder and felony murder. *People v Bigelow*, 229 Mich App 218, 220-221; 581 NW2d 744 (1998). Accordingly, we remand to the trial court for modification of the judgment of sentence in accordance with *Bigelow*.

IV

Lastly, defendant argues that there was insufficient evidence to sustain his conviction of attempted murder regarding Sharma.

In reviewing the sufficiency of the evidence to sustain a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found

that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).

The statute proscribing attempted murder, MCL 750.91, provides, in pertinent part:

> Any person who shall attempt to commit the crime of murder by poisoning, drowning, or strangling another person, or by any means not constituting the crime of assault with intent to murder, shall be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years.

In contrast, the assault with intent to murder statute, MCL 750.83, provides:

> Any person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony, punishable by imprisonment in the state prison for life or any number of years.

These two offenses are mutually exclusive crimes. *People v Smith (On Rehearing)*, 89 Mich App 478, 483; 280 NW2d 862 (1979). Along with the specific means of perpetration listed in the attempted murder statute, the statute is intended to proscribe and provide punishment for those attempts at murder that do not involve an assault. *Id.* Also, a conviction of attempted murder requires a showing that the defendant intended to bring about a death and may not be based on a defendant's negligent or reckless actions. *People v Graham*, 219 Mich App 707, 711; 558 NW2d 2 (1996).

Here, sufficient evidence was presented to support defendant's conviction of attempted murder. Sharma testified that when he entered his home, defendant immediately told him to lie down. Defendant tied

Sharma with his belt and a vacuum cleaner cord, and tied a scarf around his neck. Defendant used cologne as an accelerant and set fire to an aerosol can in the living room of the home. Defendant fled upon hearing the smoke detector. Sharma was able to undo his bonds, but the fire had spread to the carpet of the home. Sharma threw the burning aerosol can onto his lawn before calling the police for help. The evidence that defendant intentionally set fire to the house after tying up the victim and leaving him on the floor was sufficient to support an inference of intent to kill. Defendant attempts to characterize his actions as assaultive, so as to preclude the applicability of an attempted murder charge. However, defendant's conduct of leaving the victim in the home while tied up and then setting fire to the home formed the basis for the attempted murder charge.

Accordingly, the evidence showed that defendant attempted to murder Sharma by means not constituting the crime of assault with intent to murder. The jury's conviction of attempted murder is supported by the evidence beyond a reasonable doubt.

We do, however, agree with defendant that the trial court was not authorized to impose a sentence of nonparolable life imprisonment for defendant's conviction of attempted murder. MCL 750.91 and MCL 791.234(6). Therefore, on remand, the trial court shall also modify the judgment of sentence to reflect a parolable life term for defendant's conviction of attempted murder.

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.