# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MICHAEL TARRIS-RASHAD NORRIS,

      Defendant-Appellant.

UNPUBLISHED
June 9, 2015

No. 321185
Kent Circuit Court
LC No. 13-008427-FC

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Defendant was convicted by a jury of two counts of felony murder, MCL 750.316(1)(b); two counts of assault with intent to commit murder, MCL 750.83; one count of assault with intent to rob while armed, MCL 750.89; and five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without the possibility of parole for each of his felony murder convictions; life imprisonment for each of his assault with intent to commit murder convictions; life imprisonment for his assault with intent to rob while armed conviction; and two years' imprisonment for each of his felony-firearm convictions. He appeals as of right. Because defendant's claims of prosecutorial misconduct are without merit, we affirm.

In the early morning hours of September 3, 2012, acting with an accomplice, defendant shot and robbed three men coming out of a party store. Two of the victims died and the third was seriously injured. A short time later, four or five blocks from the first shooting, defendant then shot two more men in a parking lot. Both men were seriously injured, but they survived their gunshot wounds. At trial, in addition to other testimony and evidence implicating defendant, cellular telephone records placed defendant in the area of the shootings around the time both shootings occurred. Defendant's accomplice, Manual Rosado, testified against defendant and specifically identified defendant as the shooter. Another witness testified that, shortly before the shootings, defendant and Rosado obtained guns from a man named "Swello." One of defendant's friends, Antonio Jones, also testified that, the day after the shooting, defendant confessed to Jones that he had shot three people. Defendant also told another individual, Louis Wilbon, that he threw the gun away in the Burton Heights area, and a gun was recovered shortly after the shootings in that area of the city. The gun was later matched to shell casings recovered at the scenes of both shootings. A jury convicted defendant as noted above. He now appeals as of right.

Defendant's sole claim on appeal is that the prosecutor committed several instances of misconduct during closing arguments. In particular, defendant contends (1) that the prosecutor raised an impermissible civic duty argument and made inflammatory appeals to the jury's sympathies, (2) that the prosecutor shifted the burden of proof, and (3) that the prosecutor improperly vouched for the credibility of two prosecution witnesses.

Defendant failed to object to any of the challenged remarks at trial or to request a curative instruction, meaning that our review on appeal is for whether plain error affecting defendant's substantial rights occurred. See *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Consequently, "[r]eversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 329-330. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (internal citations omitted).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 279 Mich App at 134. To make this determination, we review the record as a whole and evaluate a prosecutor's remarks in context, considering the particular facts of the case, the evidence admitted at trial, and any arguments by defense counsel. *Callon*, 256 Mich App at 330. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* A prosecutor may, for example, comment on the credibility of witnesses during closing arguments. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Further, a prosecutor may use emotional language and need not confine her arguments to the blandest of all possible terms. *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003); *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001).

A prosecutor may not, however, appeal to the jury to sympathize with the victim or urge the jury to "convict as part of its civic duty or on the basis of its prejudices." *Unger*, 278 Mich App at 237; *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). Such arguments are not permitted because they improperly inject issues broader than the guilt or innocence of the defendant. *People v Abraham*, 256 Mich App 265, 273; 662 NW2d 836 (2003). In addition, "[a] prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). A prosecutor must also refrain from vouching for the credibility of a witness by implying that he or she possessed "special knowledge of the witness's truthfulness." *Thomas*, 260 Mich App at 455.

In this case, defendant first argues that the prosecutor presented an impermissible civic duty argument that urged the jury to convict in order to protect community safety and in particular for the safety of the Hispanic community, which the prosecutor presented as vulnerable to criminal attacks. In context, the challenged remarks, shown in italics, were as follows:

And the truth is if the defendant had not been in town, this man, this defendant had not been in town, up in Big Rapids - - he doesn't care about these people, he doesn't care about anybody from here, he's not from here - - these men would be alive. They'd be alive because [Rosado], Swello, whoever it is, whoever you want to believe is involved in this, we know [Rosado] is. You know, this is not their first rodeo. If they would have just robbed three drunk Mexicans coming out of the bar or out of the store, they may have fired a warning shot like [Rosado] did, like Swello's done, but these men would not have been mowed down.

The defendant doesn't know anybody here. He doesn't care who sees him do what. He was pumped up, he was drunk, he was high, and maybe trying to prove something to [Rosado] and the [Maniac Latin Disciples (MLD)]. And he goes out there with this gun and he just mows these people down. Because if it was just a robbery, that they're just going to rob him and they didn't shoot him, he didn't point the gun, pull the trigger, and fire and fire and fire, you wouldn't even be here.

*So I'm going to tell you I don't know how many robberies we have in the Hispanic community or in the inner city in Grand Rapids, but there are many, many, many, many that occur that no one ever reports. These are the perfect victims, right? I mean, they don't want to draw attention to themselves. If they're just robbed are they going to call the police? They don't even have good I.D. Some of them are illegal. [One of the victims] tells you, you know, he's not here legally. He's lived here for many years. They have lives here, but are they going to risk being found out if they report anything like that because they're robbed? No. It's kind of the cost of doing business. It's kind of the risk of living in a city where it happens all the time, especially to our Hispanic community.*

Taken in context, the challenge remarks do not constitute an improper civic duty argument. The argument did not inject issues broader than the guilt or innocence of defendant or encourage the jury to suspend its power of judgment. Instead, it appears that the prosecutor's argument—albeit somewhat convoluted in its presentation—was that Rosado acting alone or with another local member of the MLD would not have shot or killed the victims because he would have had no need to do so. In this respect, it appears that the prosecutor was attempting to explain the counterintuitive notion that Rosado—who was from the area and was in fact known to several witnesses who testified at trial—would have no reason to shoot or kill the victims because this robbery was not his "first rodeo" and he would thus have been well-aware that robberies in the inner-city or against the Hispanic community often went unreported. This line of reasoning served to explain why Rosado may have selected the particular victims in this case, and it comported with Rosado's testimony that, at the time of the robbery outside the party store, he fired a warning shot into the air, but that he did not actually shoot any of the victims. In contrast, defendant was from out-of-town and, according to the prosecutor's theory of the case, he unnecessarily escalated the offense to murder because he was "pumped up," drunk, high, and looking to impress those around him, which he did by killing two men and shooting three others. In short, the prosecutor merely sought to argue that it was defendant, not Rosado, who escalated the crime from an armed robbery to an actual shooting and a multiple homicide. In this context, the prosecutor's references to the Hispanic community was not an improper appeal for sympathy

or an improper appeal to convict defendant as part of a civic duty in order to protect the Hispanic community.  Furthermore, even if some of the prosecutor's remarks were gratuitous or could be construed as the presentation of a civic duty argument, the trial court cured any resulting prejudice by instructing the jury that the lawyers' arguments were not evidence and that the jury's verdict should not be influenced by sympathy or prejudice.  See *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001).

Next, defendant argues that the prosecutor improperly appealed to the sympathy of the jury by stating "[t]hank God I have no pictures" of the crime scene and "thank God" that one of the victims did not suffer because he died almost instantly.  More fully, the prosecutor stated:

[One of the victims was] shot in the head.  Thank God - - I would say thank God it was one shot that put him down instantly, you know tearing through his brainstem, because he didn't suffer.

* * *

Two counts of assault with intent to murder and two counts of felony firearm for scene two.  You know the victims here.  Thank God I have no pictures.

Defendant contends that these remarks were intended to inflame the jury's sympathies "by emphasizing the horror and bloodiness of the crimes."

Defendant's claim in this respect is without merit.  Regarding the first comment, the prosecutor's remarks regarding the victim's instantaneous death, while gruesome, concerned facts in evidence in light of ample testimony regarding the victims' autopsies and the crime scenes, and we see nothing improper in these remarks.  As noted, the prosecutor has wide latitude in respect to her argument and she was not required to confine those arguments to the blandest of all possible terms. *Aldrich*, 246 Mich App at 112.  Regarding the prosecutor's thanks to God that there were "no pictures" of the victims at the second crime scene to show the jury, in context, this remark was not an appeal for sympathy or a comment on the gruesomeness of what such images might have displayed.  Rather, the prosecutor began her closing argument by noting that she was using a PowerPoint presentation.  She indicated that there were pictures of some of the victims, but not all, and she explained that she only had pictures of the victims who died because those were the victims present at the crime scene when technicians arrived, while those victims who survived had been taken to the hospital.  In short, her comment indicating that she had no pictures of the victims at the second scene was merely a remark on the outcome of the crime, i.e., that the victims injured in the second shooting were not dead.  We see nothing improper or inflammatory in these remarks.  And, in any event, the trial court's instruction that the jury should not let its decision be influenced by sympathy or prejudice was sufficient to cure any potential prejudice the comments may have had.  See *Long*, 246 Mich App at 588.

Defendant next argues that the prosecutor impermissibly shifted the burden of proof by arguing that it was "undisputed" and that there was "zero evidence" against a finding that the crimes charged were actually committed.  As noted, a prosecutor may not shift the burden of proof by commenting on the defendant's failure to present evidence or by implying that a defendant must prove something or present a reasonable explanation for damaging evidence.

-4-

*Fyda*, 288 Mich App at 464. However, a prosecutor may "observe that the evidence against the defendant is uncontroverted or undisputed[.]" *People v Godbold*, 230 Mich App 508, 521; 585 NW2d 13 (1998). See also *Fyda*, 288 Mich App at 464. Here, the prosecutor permissibly argued that the evidence was undisputed with respect to whether the charged crimes had been committed and that the salient question was whether defendant was the person who committed the crimes. This was consistent with defendant's own stance at trial. That is, defendant did not appear to challenge that the crimes had been committed; rather, consistent with the prosecutor's framing of the issue, defendant only appeared to argue that identity was at issue. Therefore, these challenged remarks by the prosecutor did not constitute misconduct. Moreover, the trial court instructed the jury on the elements of each offense, the applicable burden of proof beyond a reasonable doubt, the presumption of innocence, and the fact that defendant did not have to testify or prove anything. These instructions were sufficient to cure any potential prejudice. See *Long*, 246 Mich App at 588.

Finally, defendant argues that the prosecutor improperly vouched for the credibility of two witnesses, Antonio Jones and Detective Erik Boillat. First, with respect to Jones, the prosecutor argued that he was "sincere" and, in making this argument, the prosecutor indicated that Jones had no reason to lie and in fact cried while being questioned at an investigative subpoena hearing because he did not want defendant to go to prison. As noted, although a prosecutor may not vouch for witness credibility by implying that he or she possessed special knowledge of the witness's truthfulness, a prosecutor may argue from the evidence that a witness should be believed. *Thomas*, 260 Mich App at 455; *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005). Facts regarding Jones's close friendship with defendant as well as his demeanor at the hearing were in evidence. Accordingly, the challenged argument was a fair inference from facts in evidence. Because the challenged remark did not rely on the prosecutor's "special knowledge" of Jones's truthfulness, it did not constitute misconduct.

Second, with respect to Detective Boillat, defendant argues that the prosecutor improperly vouched for his credibility by indicating that he "is not deceptive." Placing the prosecutor's remarks in context, with regard to Detective Boillat's testimony concerning the telephone records in this case, defense counsel accused Detective Boillat on cross-examination of providing deceptive testimony. The prosecutor addressed this accusation during closing by arguing that Detective Boillat's testimony was accurate, not deceptive, because he based his opinion on information he received from an ostensibly neutral software program and because he took his job "very seriously," which the prosecution argued the jury saw for themselves from the detective's demeanor when he testified. Cf. *People v Stout*, 116 Mich App 726, 730; 323 NW2d 532 (1982) (concluding prosecutor's comments on a witness's responses and demeanor were proper). The prosecutor's remarks were thus based on the evidence and not on her special knowledge of Detective Boillat's truthfulness. Therefore, we find that the prosecutor did not improperly vouch for Detective Boillat's credibility. See *Thomas*, 260 Mich App at 455; *McGhee*, 268 Mich App at 630. Moreover, jurors are presumed to follow their instructions, and the trial court instructed the jury that it alone could determine the credibility of witnesses. These instructions cured any error relating to the prosecutor's purported vouching for Jones and Detective Boillat. See *Long*, 246 Mich App at 588.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray