# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GREGORY AUGUSTA POWELL,

Defendant-Appellant.

UNPUBLISHED
September 15, 2016

No. 327252
Wayne Circuit Court
LC No. 06-001978-FC

Before: CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

PER CURIAM.

Defendant, Gregory Augusta Powell, appeals his June 2006 jury trial convictions of assault with intent to commit murder, MCL 750.83, discharge of a firearm in a building, MCL 750.234b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant in June 2006 to concurrent terms of 12 to 20 years' imprisonment for the assault conviction and two to four years' imprisonment for the discharge of a firearm conviction, to be served consecutive to two years' imprisonment for the felony-firearm conviction. This Court previously affirmed defendant's convictions and sentences in 2007. *People v Powell*, unpublished opinion per curiam of the Court of Appeals, issued October 30, 2007 (Docket No. 272403). This case is again before this Court pursuant to a federal court opinion and order conditionally granting defendant's petition for a writ of habeas corpus because of a violation of the right to appellate counsel, and affording defendant a new appeal by right with respect to issues previously raised by defendant's retained substitute counsel in a motion for reconsideration in the prior appeal. *Powell v Bergh*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued April 14, 2015 (Docket No. 12-cv-11100). We again affirm.

Defendant's convictions arise from an early-morning shooting inside a Detroit establishment, Marilyn's on Monroe, on January 16, 2006. Many of the guests were acquainted through a car and motorcycle club named Rough Riders. Defendant, an officer of the club's car division, intervened in an argument between one of the guests, Charles Scott, and another Rough Riders officer, Aylaina Verdejo. According to Scott, Verdejo told defendant to "shoot him" and,

-1-

seconds later, Scott was shot several times.[1] Scott never actually saw a gun, but he saw fire directly in front of defendant, coming out of what appeared to be a gun, and defendant was the only person near the fire and no guests stood between Scott and defendant.

Defendant first argues that he was denied the effective assistance of counsel. We disagree. Although defendant argued that his attorney was ineffective in a post-conviction motion for relief from judgment, no evidentiary hearing was held, so his ineffective assistance claims are reviewed for mistakes apparent from the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

Both the United States Constitution and the Michigan Constitution guarantee criminal defendants the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

Defendant raises two separate instances where he claims his trial counsel was ineffective. First, defendant complains that his trial counsel failed to impeach Scott with medical records showing that his alcohol or ethanol level was "88" on the night of the shooting. Decisions regarding how to question witnesses are presumed to be matters of trial strategy. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id.* at 411 (citation omitted).

At trial, Scott testified that he had two drinks at the bar on the night of the shooting. On cross-examination, Scott denied being drunk. As defendant asserts, defense counsel did not question Scott regarding his blood alcohol content. However, we do not agree that defendant can overcome the presumption of trial strategy. Here, Scott testified he had been drinking. While defense counsel questioned Scott about whether he was drunk, counsel may have reasonably decided not to reveal Scott's blood alcohol content, which was only just over the legal limit. Further, defense counsel thoroughly cross-examined Scott regarding other circumstances that impacted Scott's credibility, including that defendant had no reason to shoot Scott, that Scott's observations were hampered by the lack of lighting and music in the bar, and that Scott never saw defendant with a gun. We will not second-guess defense counsel's judgment in focusing on these other circumstances and evidence to attack the reliability and accuracy of Scott's testimony. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Additionally, we are not convinced that the result of defendant's trial would have been different had defense

---

[1] Defendant was tried jointly with Verdejo, who was convicted of assault with intent to do great bodily harm less than murder, MCL 750.84, discharge of a weapon firearm in a building, and felony-firearm.

counsel questioned Scott on this fact. The jury was already aware that Scott was drinking on the night of the offense. We are not convinced that Scott's blood alcohol content, although just over the legal limit, would likely change the result of the trial.

Defendant also asserts that defense counsel was ineffective in failing to object to the prosecution's failure to produce several res gestae witnesses that it had endorsed on its witness list. Further, defendant argues that counsel failed to request a due diligence hearing regarding the missing witnesses and failed to request a missing witness instruction.

At issue are four witnesses listed on the prosecution's witness list, who were not produced at trial to testify—Cynthia Jones, James Gaymon, Yolanda Martin, and Kyle Colemen. At trial, the prosecutor explained that these witnesses were avoiding service and could not be located. Defendant asserts that these witnesses were res gestae witnesses, and that defense counsel should have challenged whether the prosecutor used due diligence in locating the witnesses.

Michigan statutes and the rules of evidence address the right to confront res gestae witnesses. In accordance with MCL 767.40a, the prosecution is required to notify a defendant of all known res gestae witnesses and all witnesses who the prosecution intends to produce at trial. *People v Cook*, 266 Mich App 290, 295; 702 NW2d 613 (2005). A res gestae witness is defined as someone who has "witness[ed] some event in the continuum of the criminal transaction and [whose] testimony would . . . have aided in developing a full disclosure of the facts at trial." *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001).

"A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial." *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). A prosecutor may be excused from producing an endorsed witness under MCL 767.40a(3) if the witness could not be produced despite the exercise of due diligence. *Id*. If due diligence is not shown, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. *Id*. "The test for due diligence is one of reasonableness, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v James (After Remand)*, 192 Mich App 568, 571; 481 NW2d 715 (1992). "Due diligence is the attempt to do everything reasonable, not everything possible" to obtain the presence of the endorsed witness. *People v George*, 130 Mich App 174, 178; 342 NW2d 908 (1983).

We do not agree that defendant was denied effective assistance on this ground. Primarily, defendant does not establish that these witnesses would have been useful to him at trial. While these witnesses were present at the Marilyn's on Monroe during the offense, there is nothing to suggest that they witnessed the actual shooting. Indeed, Investigator Michael Jackson testified specifically that Jones told police she had not seen anything. Jackson also testified that Gaymin did not see the shooting. The only evidence in the record regarding Coleman and Martin was that defendant knew them and another guest at the party saw Coleman on the night of the shooting. Moreover, while no due diligence hearing occurred, there is nothing to suggest that the prosecution did not exercise due diligence in attempting to locate the witnesses, especially in light of the prosecutor's statement that the witnesses were avoiding service. Accordingly, defendant was not denied effective assistance of counsel on this ground.

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No.2004–6, Standard 4. Defendant first argues that the trial court erred in admitting police testimony that Jones did not see anything the night of the shooting. Defendant argues this evidence was inadmissible hearsay, and its admission violated his rights under the Confrontation Clause. Defendant failed to object to this testimony at trial, so we review for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

There were several instances of testimony relevant to defendant's position. The night of the shooting, police officers Keeth Williams and Antwan Fresh were first to respond to the scene. At trial, officer Williams testified that he spoke to Jones, but did not reveal the content of that interview, pursuant to an objection from defendant. Officer Fresh testified that, during his investigation on the night of the shooting, he obtained information from Williams that identified defendant as the shooter. Fresh said Williams had obtained the information from a witness.[2] Investigator Jackson testified that he relied on witness statements to conduct his investigation, follow leads, and talk to others. Jackson testified that when he interviewed Jones at the scene and later in a phone call, she stated that she did not see anything and that he did not get very much information from her. Off the record, the prosecutor informed the court that he would not be calling Jones because she could not be located and was avoiding service. During closing arguments, Verdejo's attorney argued that the police investigation of Jones was incomplete, Jones did not appear to testify, and her observations might have been helpful to the defense. In rebuttal, the prosecutor stated:

> Officer Williams and officer Fresh, couple of first officers there at the scene. You heard about their observations when they got there. Williams you heard got information from a witness by the name of Cynthia Jones. And you heard that's where he got the information about [defendant].

Defendant contends that the statement that Jones did not see anything was inadmissible hearsay. MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). Hearsay is not admissible, except as specifically provided by the rules of evidence. MRE 802. We do not agree with defendant's claim. The statement by Investigator Jackson that Jones did not see anything was not admitted for the truth of the matter asserted. Rather, it was admitted to explain the police investigation with respect to Jones, and rebut the defense's suggestions that the police investigation was deficient in regard to Jones.

Defendant also argues that admission of this evidence violated his right of confrontation. "Both the United States and Michigan constitution guarantee a criminal defendant the right to confront witnesses against him or her." *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732

---

[2] According to Fresh, Scott did not identify defendant by name on the night of the incident, but did provide a physical description of the suspect.

(2009). The "Sixth Amendment bars testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008). Because the statement was not made for a primary purpose of proving past events for later use in a criminal prosecution, it was not testimonial and, accordingly, they were not prohibited by the Confrontation Clause. Further, because defendant cannot demonstrate error in the admission of this statement, we also reject defendant's claim that defense counsel was ineffective for not objecting. Counsel is not ineffective for failing to raise meritless or futile objections. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012).

While defendant specifically objects to the testimony that Jones did not see anything, he also suggests that he was prejudiced by the prosecutor's argument that Jones identified defendant as the shooter, especially in relation to Jackson's testimony that Jones did not see anything. We disagree that defendant was prejudiced regarding the information and arguments relating to Jones. First, we note that the prosecutor's statement and Jackson's testimony are not irreconcilable. It is possible that Jones initially provided defendant's name to police, even if she did not witness the shooting and could not provide anything of evidentiary value for trial. Further, the fact that defendant was listed as a suspect in the report by the officers at the scene was cumulative evidence. Scott testified that he also provided this information before going to the hospital and again at the hospital. Additionally, the prosecutor's statement was an inference based on the testimony of the police officers, and made in response to Verdajo's closing argument. "A prosecutor may fairly respond to an issue raised by the defendant." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Finally, the trial court instructed the jury that the prosecutor's arguments were not evidence, and the jury is presumed to have followed its instruction to only consider the evidence when deciding the case. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Affirmed.


/s/ Mark J. Cavanagh
/s/ Henry William Saad
/s/ Karen M. Fort Hood