*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENDALL LEDALE REDD,

Defendant-Appellant.

UNPUBLISHED
March 13, 2026
10:14 AM

No. 373352
Wayne Circuit Court
LC No. 21-005344-01-FC

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Following a bench trial at which both the complainant and defendant Kendall Ledale Redd testified, the trial court convicted Redd of three counts of first-degree criminal sexual conduct (CSC-I) (person under 13, defendant 17 or older), MCL 750.520b(2)(b); one count of second-degree criminal sexual conduct (CSC-II) (person under 13), MCL 750.520c(1)(a); disseminating sexually explicit matter to a minor, MCL 722.675; and accosting a child for immoral purpose, MCL 750.145a. On appeal, Redd argues complainant's testimony was too vague to support his convictions and that the prosecution's failure to investigate denied Redd a fair trial. We affirm.

## I. FACTUAL BACKGROUND

Redd was in a romantic relationship with J. Pride from 2006 to 2016. They lived together in several homes during their relationship, mostly in Detroit, Michigan, and have two sons together. The victim, AP, is Pride's child from a previous relationship, and lived with Redd and Pride. Redd and Pride moved often, living in about seven different homes before mutually agreeing to end their relationship.

In 2019, when AP was 14 years old, she got into trouble at school, causing Pride to take AP's phone and read her text messages. Pride discovered messages between AP and a friend, wherein AP disclosed instances of sexual abuse, that compelled Pride to confront AP. AP disclosed to Pride that Redd had molested her several times when she was between 7 and 11 years old. Pride took AP to the hospital and called the police. The responding officer notified the sex crimes unit at the Detroit Police Department. After AP's KidsTalk interview, Redd was arrested. Following the charges brought against him, Redd proceeded to a bench trial.

-1-

At the bench trial, AP detailed the instances of sexual abuse she experienced. AP testified Redd would come to her room or tell her to go to his and Pride's bedroom. Sometimes Redd told AP to take her clothes off, or he undressed her. Redd inserted his fingers into her vagina which was painful for AP. She told him it hurt, and he would say "it's ok. It's for a little bit." Redd touched AP's vagina with his mouth, which made AP very uncomfortable. Redd unsuccessfully tried to insert his penis in AP's vagina. He touched AP's breasts with his hands and mouth and commented that her breasts were growing. This made AP feel "disgusted." Redd made AP suck his penis and would physically move her head with his hands. Lastly, Redd made AP watch pornographic videos with him. Occasionally, Redd would condition an activity, like going to see her cousins, on AP's submission to a sexual act. After several years of this abuse, AP told Redd she would call the police and tell Pride if he touched her again.

Pride also testified at the bench trial, offering that AP and Redd got along well and AP called Redd "step-dad," although Redd did not discipline AP. Pride and Redd merely "tolerated each other" but never had any issues with domestic violence. Pride denied ever telling AP to say something happened with Redd and denied that AP's disclosure got her out of another form of trouble.

Redd denied the allegations saying he never sexually touched or hinted at sexually touching AP and never shared pornographic material with her. He testified his contact with AP during this time was minimal because AP primarily stayed with her maternal grandmother until about six years into his relationship with Pride, and that he and Pride usually stayed in "rehab houses" unsuitable for children during the time of the alleged abuse. However, the prosecutor noted AP attended daycare and schools close to the homes Redd and Pride shared, and that AP's grandmother was always working and away from home during the years Redd alleged AP lived with her grandmother.

The trial court found Redd guilty of all counts. The trial court indicated the case was one of credibility because there was no physical evidence, and testimony alone would be sufficient for conviction if the trier of fact believed the testimony beyond a reasonable doubt. Redd was sentenced to 25 to 30 years' imprisonment for each CSC-I conviction, 5 to 15 years' imprisonment for his CSC-II conviction, one to two years' imprisonment for his provision of sexually explicit material to a minor conviction, and one to four years' imprisonment for his accosting-a-child-for-immoral-purpose conviction. Redd now appeals as of right.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Redd argues that because AP's testimony was vague, the evidence was insufficient to support any of his convictions. We disagree.

This Court reviews challenges to the sufficiency of the evidence de novo and considers the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found each element of the crime proven beyond a reasonable doubt. *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "[T]his court must not interfere with the fact-finder's role in deciding the weight and credibility to give a witness's testimony—'no matter how

inconsistent or vague that testimony might be.' " *People v McFarlane*, 325 Mich App 507, 514; 926 NW2d 339 (2018), quoting *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). Finally, all evidentiary conflicts must be resolved in the prosecution's favor, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016), citing *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

To find Redd guilty of CSC-I, the trier of fact must have determined (1) defendant engaged in sexual penetration with AP and (2) AP was under 13 years old at the time. *People v Locket*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Sexual penetration includes sexual intercourse, cunnilingus, fellatio, and even slight intrusions into genital openings of another person's body. MCL 750.520a(r). Neither party disputes the statutory age requirements are met. Redd's argument is centered on AP's purportedly vague testimony about instances of sexual penetration, referencing a lack of specific details about any particular incident of sexual abuse and asserting the "generalized" accusations left room for reasonable doubt. Although AP did not recount specific details about every instance of abuse, she was able to identify the rooms in the houses where unwanted sexual penetration occurred: her room, or Redd's and Pride's shared room. Redd inserted his fingers into her vagina, performed cunnilingus on her, attempted to insert his penis into her vagina, and forced AP to fellate him. AP could also recall what Redd said to her on multiple occasions. The trier of fact deemed AP's testimony alleging several variations of sexual penetration—finger to genital opening, penis to mouth, mouth to genital opening—credible. This Court "must not interfere" with the fact-finder's role in deciding witness credibility. *McFarlane*, 325 Mich App at 514. Because the testimony addressed each element of CSC-I for multiple counts of CSC-I, we will not disturb these convictions.

To be guilty of CSC-II, Redd must have engaged in sexual contact with AP when she was under 13 years old. *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014), citing MCL 750.520c(1)(a). Sexual contact "includes the intentional touching of the victim's . . . intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose . . . ." MCL 750.520a(f), (q). In turn, "intimate parts" is statutorily defined to "include[] the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f). Again, the parties do not dispute the age requirements are met. The alleged sexual contact in this case is the intentional touching of AP's breasts. AP testified Redd touched her breasts with his hands and mouth, often while other sexual interactions occurred. That this contact occurred while other sexual acts were ongoing indicates they could reasonably have been for the purpose of sexual arousal or gratification, as required by MCL 750.520a(q). As above, the trial judge found AP's testimony relating to CSC-II sufficiently credible and was permitted to make reasonable inferences about the purpose of the sexual contact. *Solloway*, 316 Mich App at 181. We decline to disturb this conviction as well.

A victim's testimony alone can be sufficient to convict a defendant of criminal sexual conduct. *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016). The trial court, acting as factfinder, determined AP's testimony was credible when determining Redd's guilt on all counts, including those not covered by MCL 750.520h. The trial court relied on AP's testimony

that Redd showed her pornography in finding Redd guilty of violating MCL 722.675[1] by knowingly presenting a harmful sexually explicit performance to AP when she was a minor. *Lockett*, 295 Mich App at 175, citing MCL 722.675(1)(b).  AP testified Redd would try to make her watch explicit videos of people engaging in sexual acts on his phone.  He did this "multiple" times but not every time he forced her to perform sexual acts with him.  Viewed in the light most favorable to the prosecution, the testimony sufficiently permitted a rational factfinder to conclude, beyond a reasonable doubt, that Reed exhibited pornography to AP when she was a minor and this was harmful to AP.  *Xun Wang*, 505 Mich at 251; MCL 750.520h.

Similarly, the trial court found Redd violated MCL 750.145a by telling AP she had to perform sexual acts if she wanted to go to her cousin's house.  To convict Redd under this statute, the prosecution must prove he accosted, enticed, or solicited AP when she was a child with the intent to induce or force her to commit proscribed sexual acts.  *People v Darga*, 349 Mich App 1, 11-12; ___ NW3d ___ (2023) (cleaned up).  Here, Redd would enter AP's room and ask AP if she wanted to go see her cousins, "or somethin' like that."  If she said yes, Redd would tell her: "you gotta do somethin' first," indicating Redd solicited AP with the specific intent to induce or force AP to "do somethin" in exchange for some benefit, like going to see her cousins.  AP's testimony makes clear that "somethin" referred to the sexual acts detailed above.  Again, when viewed in a light most favorable to the prosecution, AP's testimony and the reasonable inferences that can be drawn from it are sufficient to support Redd's conviction.  *Xun Wang*, 505 Mich at 251; *Solloway*, 316 Mich App at 181.

In sum, Redd's sufficiency of the evidence challenge lacks merit because AP's testimony, when viewed in a light most favorable to the prosecution, was sufficient for the trier of fact to find Redd guilty of all charges beyond reasonable doubt.

## B.  FAILURE TO INVESTIGATE

Redd next argues police failed to investigate the text messages exchanged between AP and her friend, resulting in a lack of evidence reflecting the contents of those messages, and as a consequence, Redd was denied a fair trial.  We disagree.

"Preservation requirements apply to both constitutional and nonconstitutional issues.  To preserve an issue, a party must raise it before the trial court.  A challenge on one ground before the trial court is not sufficient to preserve a challenge on another ground on appeal."  *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021) (citations omitted).  Redd argues the issue is preserved because defense counsel pointed out in closing argument that there was never an officer in charge of the case; however, defense counsel did not make any objection or raise the issue of denial of a fair trial in the proceedings below.  As such, the issue is unpreserved.

This Court reviews "questions of law, and constitutional questions, de novo.  We also review de novo questions whether a defendant was denied a fair trial or deprived of liberty without

---

[1] "[A] person is guilty of the felony of disseminating sexually explicit matter to a minor if that person knowingly exhibits a sexually explicit performance to a minor that is harmful to the minor." *Lockett*, 295 Mich App at 175, citing MCL 722.675(1)(b).

due process of law." *People v Steele*, 283 Mich App 472, 486; 769 NW2d 256 (2009) (citations omitted). An unpreserved constitutional claim, however, is reviewed for plain error affecting a defendant's substantial rights. *People v Jarrell*, 344 Mich App 464, 481; 1 NW3d 359 (2022). Under the plain-error rule, a defendant must prove (1) an error occurred, (2) the error was plain, and (3) the plain error affected their substantial rights, i.e., affected the result of the proceedings. *Id.* at 482, citing *Carines*, 460 Mich at 764. "[R]eversal is warranted only when the plain error 'resulted in the conviction of an actually innocent defendant' or 'seriously affected the fairness, integrity, or public reputation of judicial proceedings . . . .' " *Jarrell*, 344 Mich App at 482, quoting *Carines*, 460 Mich at 763.

> Our Supreme Court recognizes that:
>
> Neither the prosecution nor the defense has an affirmative duty to search for evidence to aid the other's case. The duty created by [MCL 767.40a] is not to investigate for the benefit of the adversary, but to share the evidence that is discovered in fulfilling the prosecutor's and defense counsel's duties to their respective clients. [*People v Burwick*, 450 Mich 281, 289 n 10; 537 NW2d 813 (1995).]

Accordingly, the prosecutor is not required to "undertake discovery on behalf of defendant." *People v Leo*, 188 Mich App 417, 427; 470 NW2d 423 (1991). Similarly, police are not required to seek and discover exculpatory evidence. *People v Sawyer*, 222 Mich App 1, 6; 564 NW2d 62 (1997). Regarding witnesses, the prosecutor's duty is to "include the names of all known res gestae witnesses on the witness list attached to the information and all known witnesses who might be called at trial," and "provide law enforcement assistance to investigate and produce witnesses the defense requests." *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001); MCL 767.40a(1).

Redd suggests the lack of investigation into the text messages between AP and her friend resulted in a material omission of evidence and resulted in a *Brady*[2] violation. The elements of a *Brady* violation are "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). Here, Redd's reliance on *Brady* is misplaced. In this case, there is no argument the text message conversation was in the prosecutor's possession or was suppressed improperly. Rather, in closing argument, the prosecutor explained: "We don't have [the messages]. They weren't provided by the police." Redd merely suggests "[t]he prosecution should have presented evidence concerning the text messages" but fails to prove the prosecution possessed any exculpatory evidence.

At trial, the prosecutor acknowledged the contents of the conversations could not be discussed, and neither party was able to rely on the messages at trial. Redd did not object or raise any challenge on this point in the trial court. It is unlikely the evidence was exculpatory or would have affected the outcome of the proceedings in Redd's favor, considering the messages prompted Pride to ask AP if anything ever happened with Redd specifically. If anything, Pride's response to the messages supports an inference that the messages were incriminating. In short, Redd has

---

[2] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

not demonstrated that any investigatory shortcomings by the prosecutor relating to the content of the messages would have affected the outcome of this case.

As for the prosecution's alleged failure to procure witness testimony, AP's Friend was included on two witness lists submitted by the prosecution. Neither party called AP's friend as a witness. If Redd wished to do so, he could have requested assistance in procuring the friend's testimony, but there is no indication in the record that Redd made any such request. *Long*, 246 Mich App at 585. Redd opted not to seek the friend's testimony for trial and had ample opportunity to do so. That this strategy was unsuccessful does not reflect any failure on the part of the prosecutor.

For these reasons, Redd cannot prove an obvious error occurred, let alone an error that affected his substantial rights. *Jarrell*, 344 Mich App at 482. Redd's contention his due-process rights to a fair trial were violated also fails. That AP's friend was not called as a witness, and the contents of the text messages were not revealed reflects strategic choices or practical limitations imposed on both parties and is not indicative of any failure by the prosecution to adequately investigate the case.

## III. CONCLUSION

We hold the evidence, when viewed in a light most favorable to the prosecution, was sufficient to sustain Redd's convictions. Redd's assertion that the failure to investigate the case against him resulted in a violation of his due-process right to a fair trial is also meritless. Accordingly, we affirm.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young