*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 20, 2025
10:54 AM

Plaintiff-Appellee,

v

No. 366735
Oakland Circuit Court
LC No. 2022-281241-FC

JAMES EARL STANLEY,

Defendant-Appellant.

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of armed robbery, MCL 750.529, for which he was sentenced as a fourth-offense habitual offender, MCL 769.12, to 9 to 25 years' imprisonment. We affirm.

## I. FACTUAL BACKGROUND

This case arises from an armed robbery of Charles Findley and his daughter, Minmei Findley, on August 14, 2021, near their home in Hazel Park. That night, around 9:45 p.m., Charles, his partner, and Minmei went for a walk. Charles's partner was a few blocks ahead of Charles and Minmei when a bald male wearing a hooded sweatshirt and surgical mask over his face approached Charles and Minmei from behind at Ford Street and Granet. When Charles and Minmei turned to face him, the man said, "Give me all your money." The man had one hand in his pocket the whole time. Charles and Minmei told the man they did not have any money, and the man again demanded all their money or threatened to kill them. The man said he had a weapon, but neither Charles nor Minmei saw one. Minmei testified that the man specifically said he had a gun. In a panic, Charles gave the man his iPhone Max because it was all he had. The iPhone was in a plastic cover with a dreamcatcher design on it; the phone was in good condition. The man took the phone, told Charles and Minmei that if they called the police he would find them and kill them, and fled towards John R. Street, which was the direction from which he came.

The Findleys hurried home, and Charles called the police. Within minutes, Officer Cameron Nyhoff of the Hazel Park Police Department arrived. Charles logged in to his Apple account on his computer, and the "Find my iPhone" feature indicated his cell phone was nearby

-1-

on John R. Street. Meanwhile, Officer Michael Kasdorf was dispatched to the scene of the armed robbery with canine Rocky, who tracked a scent and followed a trail to a dumpster on John R. Nearby the dumpster was a homeless woman asleep on a park bench. Officer Kasdorf woke her up to speak to her, but she had no idea what was going on, was barely responsive, and smelled of intoxicants. He did not get her name. Officer Kasdorf then heard the iPhone go off by activation of the "Find my iPhone" feature. Back at the Findley's, Officer Nyhoff was informed over the radio that the phone was located, and he transported Charles and Minmei back to the scene for a possible "show up" identification. When they arrived, the suspected individual was a woman, who did not match the Findley's description of the robber, so Officer Nyhoff took them back home.

Officer Nyhoff returned to the dumpster, and retrieved the iPhone and its case. The iPhone was completely smashed and broken beyond repair. The woman nearby was asleep, and Officer Nyhoff had no direct interaction with her. However, Officer Nyhoff testified at trial that he was familiar with this woman because he had previously encountered her while working that weekend. He had found her asleep in public and asked her to move. The iPhone and case were preserved as evidence, and dusted for fingerprints by an evidence technician. One full fingerprint and one partial fingerprint were lifted from the case. The fingerprints were sent to the Oakland County Sheriff's Office forensic laboratory for analysis by Kathleen Miller. From the partial fingerprint obtained from the phone case, she was able to detect a match to defendant's fingerprint in an online database.

Detective Chad Jackson was assigned as officer-in-charge of this case, and once the fingerprint results were in, he contacted defendant to come to the station for an interview. Defendant voluntarily participated, and his recorded interview was played at trial. In the interview, defendant was confronted with the assertion that his fingerprint was found on the cell phone and that he was the person who robbed the victim. Defendant denied robbing anyone, said that he had been in Hazel Park that night visiting his cousin, and found a cell phone on John R. Street when he was walking to a gas station to buy some cigarettes. He said he tossed the cell phone back into the street (because it was not his). Defendant was free to leave the station after the interview, but was later arrested and charged with armed robbery. Subsequent to the interview, Detective Jackson obtained GPS records from defendant's phone, which placed him at the location of the robbery at the time of the crime.

## II. PROCEDURAL HISTORY

After a three-day trial, the jury convicted defendant of armed robbery. After filing his claim of appeal, he moved for a new trial in the trial court. He argued he was denied due process and a fair trial by the prosecution's failure to identify the homeless woman, who he alleged was a res gestae witness. He argued that the jury was improperly read M Crim JI 4.4 (flight) because he did not run from police, and should have been read M Crim JI 4.14 (dog-tracking evidence) because a canine sweep was conducted, and M Crim JI 5.12 (missing witness) because the homeless woman did not testify. Lastly, he argued that he was denied the effective assistance of counsel based on counsel's failure to pursue the homeless woman or object to or request the above-referenced jury instructions. The prosecution filed a response opposing defendant's motion for a new trial, arguing that none of defendant's arguments had merit. The trial court heard oral arguments, and it adopted the arguments and caselaw cited by the prosecution in denying defendant's motion. Defendant now appeals.

## III. RES GESTAE WITNESS

Defendant first argues that he was entitled to a new trial because defense counsel was not provided identifying information about the homeless woman, an alleged res gestae witness with whom the police were familiar, in violation of the prosecutor's duty under MCL 767.40a. We disagree.

A trial court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion. *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable outcomes." *Id*. Any factual findings underlying the trial court's application of the law are reviewed for clear error. *Id*. "A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court erred." *Id*.

A res gestae witness is an individual who witnessed "some event in the continuum of the criminal transaction" whose testimony would aid "in developing a full disclosure of the facts at trial." *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001). MCL 767.40a provides, in relevant part:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

> * * *

> (5) The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness. The request for assistance shall be made in writing by defendant or defense counsel not less than 10 days before the trial of the case or at such other time as the court directs. If the prosecuting attorney objects to a request by the defendant on the grounds that it is unreasonable, the prosecuting attorney shall file a pretrial motion before the court to hold a hearing to determine the reasonableness of the request.

As explained by our Supreme Court in *People v Burwick*, 450 Mich 281, 287; 537 NW2d 813 (1995), MCL 767.40a "does not impose an obligation on the prosecutor to discover and produce unknown witnesses, either by the exercise of due diligence or some lesser burden[.]" Before the amendment of the statute in 1986, the statute was interpreted to require the prosecutor to use due diligence and endorse and produce all res gestae witnesses. *Id*. The amended version creates four classes of witnesses:

> 1) witnesses *known* at the time of filing of the information who might be called at trial, 2) res gestae witnesses *known* to the prosecution or law enforcement officials

-3-

at the time of filing of the information, 3) res gestae witnesses whose names later become known, and 4) witnesses the prosecutor determines he intends to call at trial. [*Id.*]

The former obligation of the prosecution to use due diligence to produce any individual who might have any knowledge of the crime was replaced in the statute with a scheme that:

1) contemplates notice at the time of filing of the information of known witnesses who might be called and all other known res gestae witnesses, 2) imposes on the prosecution a continuing duty to advise the defense of all res gestae witnesses as they become known, and 3) directs that that list be refined before trial to advise the defendant of the witnesses the prosecutor intends to produce at trial. The prosecutor's duty to produce res gestae witnesses has been replaced with an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's request.

The Legislature has thus eliminated the prosecutor's burden to locate, endorse, and produce unknown persons who might be res gestae witnesses and has addressed defense concerns to require the prosecution to give initial and continuing notice of all known res gestae witnesses, identify witnesses the prosecutor intends to produce, and provide law enforcement assistance to investigate and produce witnesses the defense requests. [*Id.* at 288-289 (footnote omitted).]

In other words, the prosecution's duty under MCL 767.40a is "to provide notice of known witnesses and reasonable assistance to locate witnesses on a defendant's request." *People v Gadomski*, 232 Mich App 24, 35-36; 592 NW2d 75 (1998). "*There is no requirement to exercise due diligence to discover the names of witnesses.* The purpose of the 'listing' requirement is merely to notify the defendant of the witness'[s] existence and res gestae status." *Id.* at 36 (emphasis added; brackets, quotation marks, and citations omitted).

As an initial matter, the evidence does not establish that the homeless woman encountered near the dumpster where Charles's phone was located meets the definition of a "res gestae witness," i.e., a person who witnessed "some event in the continuum of the criminal transaction" whose testimony would aid "in developing a full disclosure of the facts at trial." *Long*, 246 Mich App at 585. Defendant relies on Officer Kasdorf's testimony—that if he was standing at the bench where the woman was found, he could see the dumpster 10 to 20 yards away—to claim that the woman saw something in relation to this crime. This is far too speculative to establish that the woman did, in fact, see something, and it is contrary to the actual evidence admitted at trial. Officer Nyhoff testified that the woman was asleep when he encountered her, and she was 50 to 75 feet from the dumpster. Officer Kasdorf said the woman was passed out and intoxicated on a park bench. When he woke her up to speak to her, she smelled of intoxicants and had no idea what was going on. She did not respond to his questions "real well." After many sustained objections against defense counsel's line of questioning, Officer Kasdorf testified that he did not know what this woman saw or did not see before he arrived. Thus, the evidence does not establish that the woman was a res gestae witness because there is no evidence that she witnessed any event of the

criminal transaction or that she would give any testimony to aid in the fact-finding process at trial. See *id*.

Further, the trial court did not abuse its discretion by denying defendant's motion for a new trial because the prosecution did not violate any of its duties regarding res gestae witnesses under MCL 767.40a where the identity of the homeless woman was unknown. Under the statute, the prosecution must provide notice of *known* witnesses and reasonable assistance to locate witnesses upon the defendant's request. *Burwick*, 450 Mich at 289. The duty does not apply to unknown witnesses, *id*., and the prosecution has no duty to discover the names of unknown witnesses, *Gadomski*, 232 Mich App at 36. Although Officer Nyhoff testified that he was familiar with this woman, her identity was still unknown. Officer Nyhoff testified that he had worked that entire weekend, and had dealt with the woman multiple times by finding her sleeping in the park and telling her she could not do that. He did not deal with her directly at the scene of the robbery. Officer Kasdorf encountered the woman directly, had not encountered her before, and she was barely coherent in their interaction. Officer Kasdorf did not know her name. When Detective Jackson was assigned the case, he tried to learn the woman's identity, but her name was not provided in any of the case notes. Officer Nyhoff told Detective Jackson the woman was a vagrant who frequented the area, so Detective Jackson drove around, but found no one matching her description. He spoke to all the officers who responded to the scene, and none had any further communication with the woman other than waking her up and asking her to move.

Thus, because the homeless woman's identity was unknown to the police, despite efforts by Detective Jackson to locate and identify her, the prosecution had no duty under MCL 767.40a to disclose her name as a res gestae witness, and did not violate any duty under the statute. MCL 767.40a(1)-(2). Moreover, there is no written notice in the record of any request by defendant to locate her, so there is no violation under MCL 767.40a(5). As such, the trial court did not abuse its discretion by denying defendant's motion for a new trial based on any dereliction of duty by the prosecutor or law enforcement regarding the homeless woman as an alleged res gestae witness.

IV.  JURY INSTRUCTIONS

Defendant argues that the trial court should not have read M Crim JI 4.4 (flight), and it should have read M Crim JI 4.14 (dog-tracking evidence) and M Crim JI 5.12 (missing witness) to the jury. We disagree.

"An issue is preserved for appeal if it is addressed to the trial court, irrespective of whether the issue is addressed by the trial court." *People v Meeker*, 340 Mich App 559, 568; 986 NW2d 622 (2022). Although defendant raised these issues regarding jury instructions in his motion for a new trial, a defendant must object or request that a jury instruction be given to preserve an issue on appeal related to jury instructions. MCL 768.29; *People v Head*, 323 Mich App 526, 537; 917 NW2d 752 (2018). When the trial court indicated that instruction "404," presumably M Crim JI 4.4, would be read, the prosecutor agreed and defense counsel made no objection. Thus, defendant's argument that this jury instruction should not have been given is not preserved. On defendant's list of requested jury instructions filed before trial, he did not request M Crim JI 4.14. At trial, M Crim JI 4.14 was not orally listed by the court or requested by defense counsel. As such, defendant's argument that M Crim JI 4.14 should have been read is not preserved. Lastly, defendant requested that M Crim JI 5.12 be read to the jury in his pretrial list of requested

instructions and at trial, which the trial court denied. Therefore, defendant's argument regarding M Crim JI 5.12 is preserved.

As stated earlier in this opinion, this Court reviews the trial court's decision on defendant's motion for a new trial for an abuse of discretion. *People v Craig*, 342 Mich App 217, 225-226; 994 NW2d 792 (2022). Defendant's preserved claim of instructional error regarding M Crim JI 5.12 is reviewed de novo. *People v Martin*, 271 Mich App 280, 337; 721 NW2d 815 (2006). Instructions are reviewed as a whole to determine whether they adequately protected the defendant's rights by fairly presenting the issues to be tried to the jury. *Id*. at 337-338. This Court reviews the trial court's decision whether a jury instruction applies to the facts of the case for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). An instructional error does not warrant reversal "unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A); see also *People v Cornell*, 466 Mich 335, 362-363; 646 NW2d 127 (2002). The burden is on the defendant to prove that an error resulted in the miscarriage of justice. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

Defendant's unpreserved claims of instructional error regarding M Crim JI 4.4 and 4.14 are reviewed for plain error affecting substantial rights. *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020).

> To avoid forfeiture under the plain error rule three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 653 (quotation marks and citations omitted).]

The last day of trial began with discussion of the jury instructions. After going through all of the jury instructions with both counsel outside the presence of the jury, both counsel indicated that they were otherwise satisfied with the jury instructions to be read. At the end of the reading of the instructions to the jury, defense counsel indicated he was satisfied with the instructions as read. As an initial matter, "[a] party's explicit and express approval of jury instructions as given waives any error and precludes appellate review." *Id*. As such, this Court may deem defendant's arguments related to the jury instructions waived. *Id*. However, because defendant raised these issues in his motion for new trial, and challenges the trial court's decision on his motion on appeal, the merits of his arguments will be addressed.

Every defendant has the right to a properly-instructed jury. *Id*. The trial court must instruct the jury on the law applicable to the case, and present the case fully and fairly in an understandable manner. *Id*. (citation omitted). Jury instructions must include all elements of the charged offense; jury instructions cannot exclude material issues, defenses, or theories that the evidence supports. *Id*. Jury instructions are reviewed as a whole to determine if there is error requiring reversal. *Id*. "[E]ven if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights." *Id*. (quotation marks and citation omitted).

## A. M CRIM JI 4.4

The only jury instruction at issue on appeal that the trial court actually delivered is a modified version of M Crim JI 4.4. The court instructed the jury on flight as follows:

> There has been some evidence the Defendant tried to run away after. The evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake or fear; however, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and if true whether it shows the Defendant had a guilty state of mind.

Defendant argues that this instruction should not have been read to the jury because there was no evidence that defendant ran from police or tried to conceal himself as neither victim identified defendant as the robber, and defendant cooperated with the police. Charles testified that after he gave the robber his phone, the robber warned Charles and Minmei not to call the police or he would kill them, and then fled in the direction from which he came, toward John R. Street. Fingerprints were lifted from the recovered cell phone case by the Hazel Park Police Department, and the results of the fingerprint analysis showed a match to defendant. GPS data retrieved from defendant's phone also placed him in the area of the robbery at the time it occurred. This was sufficient circumstantial evidence to establish defendant's identity as the perpetrator of the armed robbery, who fled from the scene after stealing the cell phone. See *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016) (reasonable inferences arising from circumstantial evidence can be sufficient to prove identity). Thus, there was no plain error in the trial court's reading of M Crim JI 4.4 where the record evidence supported it.

But even if the trial court erred by instructing the jury on flight, defendant failed to establish that an error in reading M Crim JI 4.4 affected his substantial rights or prejudiced him. See *Spaulding*, 332 Mich App at 652-653. The instruction read informed the jury that the evidence of flight did not prove guilt, that a person could run for innocent reasons or because of consciousness of guilt, and it was up to the jury to decide whether defendant had a guilty state of mind. "Jurors are presumed to follow their instructions," *People v Horton*, 341 Mich App 397, 405; 989 NW2d 885 (2022), and here, the jury was instructed that it could find the evidence of flight to prove a consciousness of guilt or not. Thus, there was no plain error in the trial court's reading of M Crim JI 4.4, and the trial court did not abuse its discretion in denying defendant's motion for a new trial in this regard.

## B. M CRIM JI 4.14

There was no mention of M Crim JI 4.14 whatsoever at trial, nor was it requested by defendant pretrial. This instruction provides:

> You have heard testimony about the use of a tracking-dog. You must consider tracking-dog evidence with great care and remember that it has little value as proof. Even if you decide that it is reliable, you must not convict the defendant based only on tracking-dog evidence. There must be other evidence that the defendant is guilty. [M Crim JI 4.14.]

Defendant relies on the "use note" to M Crim JI 4.14 to argue that the instruction should have been given, which states, "This instruction must be given when testimony about the use of tracking-dog evidence is introduced." Use Note, M Crim JI 4.14.

"Pursuant to MCR 2.512(D)(2), pertinent model jury instructions must be given in each action in which jury instructions are given if the model instructions are applicable, accurately state the applicable law, and are requested by a party." *People v Bush*, 315 Mich App 237, 243; 890 NW2d 370 (2016) (quotation marks omitted). However, the Model Criminal Jury Instructions are not binding, nor are the use notes. *People v Carroll*, ___ Mich ___, ___ n 2; 8 NW3d 576 (2024). Here, defendant did not request that M Crim JI 4.14 be read to the jury, and the use note does not provide binding authority requiring the trial court to read it. Therefore, there was no plain error in the trial court's failure to read M Crim JI 4.14.

Moreover, defendant does not assert that any error in failing to read M Crim JI 4.14 affected his substantial rights or prejudiced him. See *Spaulding*, 332 Mich App at 652-653. He actually concedes that the evidence from the dog handler, Officer Kasdorf, "did not implicate" defendant. Indeed, the testimony by Officer Kasdorf established that canine Rocky followed a scent, and tracked to the dumpster where Charles's stolen phone was located. Officer Kasdorf heard the phone go off as a result of the "Find my iPhone" function used by Charles and the officers with him, and then Officer Nyhoff retrieved the phone and case from the dumpster. The dog-tracking evidence did not implicate defendant in any way. As such, there was no plain error affecting defendant's substantial rights by the trial court's failure to read M Crim JI 4.14, and no abuse of discretion by the trial court's decision to deny defendant a new trial on this basis.

## C. M CRIM JI 5.12

The jury instruction for M Crim JI 5.12 states: "[*State name of witness*] is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case." On the third day of trial, the trial court addressed defendant's request for this instruction to be included. The prosecutor believed M Crim JI 5.12 should not be read, and defense counsel argued that the missing witness was the unnamed woman near the dumpster. Because the police were going to do a "show-up" identification of her, according to defendant, this proved she was a potential witness, and the prosecution had to try to produce her. The prosecution responded that M Crim JI 5.12 only applies where the prosecutor fails to produce an endorsed witness, and the prosecutor did not endorse this woman. The trial court ruled:

> So the Court says that based on the case[]law that that is not a witness that was endorsed by the prosecutor's office. It is not a missing witness who it appears was the responsibility of the prosecutor and, therefore, you may infer the witness'[s] testimony would have been unfavorable to the prosecution.
>
> The Court is denying your request for the instruction, [defense counsel]; however, sir, you [may] make your argument and closing statement, you know, that they should have presented a witness that they didn't present.

Defendant argues on appeal that M Crim JI 5.12 should have been read to the jury based on the missing homeless woman as a res gestae witness. Defendant concedes on appeal that the homeless woman was not an endorsed witness, so the prosecutor was not obligated to produce her at trial, but essentially relies on his previously-addressed argument that the prosecutor was in violation of MCL 767.40a, and based on the prosecutor's failure to identify this witness, M Crim JI 5.12 should have been read. As concluded earlier in this opinion, there was no violation of MCL 767.40a by the prosecution because it had no duty to identify the homeless woman as an alleged res gestae witness. The evidence established that her identity was unknown to the responding police officers, and the prosecution no longer has an obligation under the statute to identify her. See *Burwick*, 450 Mich at 289. Therefore, defendant's argument that M Crim JI 5.12 should have been read based on the prosecution's obligation under MCL 767.40a lacks merit, and the trial court did not abuse its discretion by denying defendant's motion for a new trial based on the trial court's denial of defendant's request to read this instruction.

## V. INEFFECTIVE ASSISTANCE

Defendant argues he was denied the effective assistance of counsel based on defense counsel's failure to procure the homeless woman as a res gestae witness and by defense counsel's failure to object to M Crim JI 4.4 or request M Crim JI 4.14. We disagree.

To preserve an issue of ineffective assistance of counsel, the defendant must move in the trial court for a new trial or for an evidentiary hearing. *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017). Defendant raised these ineffective-assistance claims in his motion for a new trial. However, because there was no evidentiary hearing held, defendant's claim of ineffective assistance of counsel is reviewed for mistakes apparent on the record alone. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003). A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The legal questions involved are reviewed de novo. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). The trial court's factual findings are reviewed for clear error. *Trakhtenberg*, 493 Mich at 47. A finding is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made on the whole record. *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018) (citation omitted). As stated earlier, this Court reviews the trial court's decision on defendant's motion for a new trial for an abuse of discretion. *Craig*, 342 Mich App at 225-226.

To establish ineffective assistance of counsel, a defendant must show that (1) trial counsel's performance was objectively deficient, and (2) the deficiencies prejudiced the defendant. *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). The reviewing court must objectively determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 105-106 (quotation marks and citations omitted). Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Randolph*, 502 Mich at 9 (quotation marks and citation omitted). It is presumed that counsel is effective, and defendant must overcome the strong presumption that counsel's actions constitute sound trial strategy. *People v Cooper*, 309

Mich App 74, 80; 867 NW2d 452 (2015). This Court must "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted).

Defendant first argues that counsel was ineffective for failing to pursue the homeless woman before trial, and that counsel was "rendered ineffective by the actions of the state in failing to provide identifying information about the woman," who was a res gestae witness. As fully explained earlier in this opinion, the evidence did not establish that the homeless woman was a res gestae witness because there was no evidence establishing that she witnessed any part of this crime. See *Long*, 246 Mich App at 585. Secondly, as concluded earlier, there was no violation of MCL 767.40a because the prosecution had no duty to identify the unknown woman as a res gestae witness. See *Burwick*, 450 Mich at 289. The evidence established that none of the responding police officers knew who she was, and Detective Jackson could not locate her during his investigation. Thus, any argument defendant makes that counsel was rendered ineffective by lack of government action with regard to this woman lacks merit, and moreover, he relies on a nonbinding, concurring opinion to make this argument. See *People v Shahideh*, 482 Mich 1156, 1174; 758 NW2d 536 (2008) (TAYLOR, C.J., concurring) ("It is true that under certain circumstances, . . . a defendant's right to the effective assistance of counsel may be denied by government action[.]").[1] But see *People v Armstrong*, 207 Mich App 211, 214-215; 523 NW2d 878 (1994) (a majority must agree on a ground for decision to create binding precedent). Defendant does not specifically explain how defense counsel's actions, or lack thereof, constitute deficient performance or prejudiced him. See *Randolph*, 502 Mich at 9. Seemingly, defendant asserts that counsel's failure to seek assistance on this witness was not a matter of trial strategy as it was not discovered until trial that the police were familiar with her.

Regardless, defendant has failed to meet his burden to establish ineffective assistance. See *id*. He does not establish deficient performance where counsel did not pursue an individual who was intoxicated and asleep, not even at the scene of the armed robbery, but rather, near the dumpster where the stolen phone was located. Defendant failed to establish how this prejudiced him, where there was no evidence that this woman saw anything related to this crime, or would

---

[1] The portion of *Shahideh* cited by defendant also cites to a United States Supreme Court case, *Bell v Cone*, 535 US 685, 696 n 3; 122 S Ct 1843; 152 L Ed 2d 914 (2002), and a Michigan Supreme Court case, *People v Mitchell*, 454 Mich 145, 154; 560 NW2d 600 (1997), which both describe examples of situations in which the failure of the state to provide counsel violates the Sixth Amendment. The example of such government action referenced in *Bell* was the outright denial of counsel to a criminal defendant, which is in no way comparable to the present case, where defendant's argument is not that he was denied counsel, but that the government failed to provide his counsel with the identification of a potential witness who had been found at the location where evidence was found and who was asleep and intoxicated. In *Mitchell*, an additional example provided of such a situation was defense counsel who provided no actual assistance to the defendant, i.e., counsel who entirely failed to subject the prosecution's case to meaningful adversarial testing. In the present case, nothing in the record suggests that defense counsel's performance equated to the example provided in *Mitchell*.

testify favorably for defendant.  As such, defendant was not denied effective assistance in relation to this witness issue.

Secondly, defendant provides no analysis as to his argument that counsel was ineffective based on his failure to request or object to certain jury instructions.  He merely states in an introductory paragraph in his brief on appeal, "[t]o the extent trial counsel . . . did not object to or request jury instructions, [defendant] asserts he was denied effective assistance of counsel."  It is well established that an "appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."  *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted).  Additionally, "[t]he failure to brief the merits of an allegation of error constitutes an abandonment of the issue."  *Id*. (quotation marks and citation omitted).  Defendant's failure to provide any analysis or supporting authority constitutes abandonment of this issue on appeal.  Nonetheless, given the conclusions reached earlier in this opinion that there were no errors at trial regarding M Crim JI 4.4 or 4.14, any further request or objection made by defense counsel would have been futile.  See *Isrow*, 339 Mich App at 532 ("Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel.").  Therefore, counsel was not ineffective in relation to these claimed instructional issues.

## VI.  STANDARD 4 BRIEF

### A.  SUBJECT-MATTER JURISDICTION

Defendant argues in his Standard 4 Brief that the trial court lacked subject-matter jurisdiction over this matter because it failed to hold a probable cause hearing, in violation of MCL 766.4 and MCR 6.108.  We disagree.

Defendant raised this argument for the first time in his Standard 4 Brief.  Generally, issues raised for the first time on appeal are not preserved.  See, generally, *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011); see also *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020) ("This Court also has the power to consider an issue when necessary, even if unpreserved or not properly presented.").  However, it appears that defendant is arguing that the trial court lacked subject-matter jurisdiction, which may be raised for the first time on appeal because subject-matter jurisdiction may be raised at any time.  *People v Johnson*, 345 Mich App 51, 58; 3 NW3d 846 (2022).  Whether a court has subject-matter jurisdiction presents a question of law reviewed de novo.  *Id*.  De novo review permits this Court to review the issues independently, "with no required deference to the trial court."  *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).

MCL 766.4(1) provides that the magistrate before whom a defendant is arraigned on a felony charge shall set the dates for a probable cause conference and preliminary examination at the time of arraignment.  However, "[t]he probable cause conference may be waived by agreement between the prosecuting attorney and the attorney for the defendant.  The parties shall notify the court of the waiver agreement and whether the parties will be conducting a preliminary examination, waiving the examination, or entering a plea."  MCL 766.4(2).  Similarly, MCR 6.108(A) provides the state and the defendant the right to a probable cause conference,

unless waived by both parties, with written notice provided to the court to indicate whether a preliminary examination will be held or waived, or the defendant will enter a plea.

The district court register of actions indicates that defendant's arraignment was held on April 8, 2022, and a probable cause conference was scheduled. The register of actions indicates that the probable cause conference was held on April 19, 2022, attorney Richard Taylor appeared for defendant, and the conference was "removed from calendar" and "scheduled for examination," with "notice to appear for defendant attorney requested." The preliminary examination was held on May 31, 2022, and continued to June 21, 2022, because of illness of one of the witnesses. On June 29, 2022, defendant and his attorney executed a waiver of arraignment in the circuit court, indicating that defendant stood mute to the charge and requested the court to enter a not-guilty plea. See *People v Nix*, 301 Mich App 195, 207-208; 836 NW2d 224 (2013). Attorney Taylor moved to withdraw his representation of defendant, which the trial court granted, and attorney Ted Friedman was appointed in his place. Thus, according to the district court register of actions, it does not appear that there was any violation of MCL 766.4 or MCR 6.108 as a probable cause conference was held in the district court, defendant's first attorney appeared, and a preliminary examination was scheduled and then held.

Moreover, subject-matter jurisdiction "is a legal term of art that concerns a court's authority to hear and determine a case." *Johnson*, 345 Mich App at 58 (quotation marks and citation omitted). Subject-matter jurisdiction "concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of the case." *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011) (quotation marks, citations, and emphasis omitted). In this case, defendant was charged with one felony—armed robbery. "Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases." *Id*. Therefore, the trial court had jurisdiction over defendant's felony charge in this case. Defendant's argument that a probable cause conference was not held concerns events or procedures of this particular case; it does not concern the court's abstract power to try a case of this kind or character. Although a judgment of sentence entered when a trial court lacks-subject matter jurisdiction is rendered void, *Johnson*, 345 Mich App at 59, defendant has failed to establish that the trial court lacked subject-matter jurisdiction of this matter, and he is not entitled to relief.

## B. INEFFECTIVE ASSISTANCE

Lastly, defendant argues in his Standard 4 Brief that he was denied the effective assistance of counsel at trial because defense counsel did not impeach Minmei or the fingerprint expert, Miller, with prior inconsistent statements. We disagree.

As stated earlier, to preserve an issue of ineffective assistance of counsel, the defendant must move in the trial court for a new trial or for an evidentiary hearing. *Foster*, 319 Mich App at 390. The issues of ineffective assistance of counsel raised in defendant's Standard 4 brief were not raised in his motion for a new trial. Because defendant's claims of ineffective assistance of counsel in his Standard 4 Brief are unpreserved, this Court's "review is limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

Defendant first argues that trial counsel was ineffective for failing to impeach Minmei's trial testimony with an inconsistent statement she previously gave to police. Defendant cites what

is seemingly a police report with Minmei's statement, which says, "Minmei stated 'that she could recognize the individual if she saw him again.' " However, at trial, Minmei could not identify defendant as the robber. Defendant also asserts that in Minmei's statement to the police, she described the robber as being 6 feet 2 inches to 6 feet 3 inches tall, based on her father's height, and defense counsel could have had defendant stand up at trial to demonstrate that he is only 6 feet tall.

However, the document that defendant relies upon in support of this argument, seemingly a police report, is not contained in the lower court record and was not admitted at trial; thus, we cannot confirm the statements attributed to Minmei that defendant asserts in his brief. In *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 18-19, the defendant's claim of ineffective assistance failed because he could not establish the factual predicate for his claim without relying on investigator notes and a death scene investigation report, both of which were not included in the lower court record. "[A] party may not expand the record on appeal, which consists of the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced." *Id*. at ___; slip op at 18 (quotation marks and citation omitted). Moreover, defendant has the burden of establishing the factual predicate for his claim of ineffective assistance. *Id*. at ___; slip op at 19. Because defendant cannot support this claim of ineffective assistance of counsel without reference to statements in documents outside the trial court record, like the defendant in *Serges*, he cannot establish a factual predicate for his claim, and his argument that defense counsel was ineffective for failing to impeach Minmei fails. See *id*. at ___; slip op at 18-19.

In any case, even if Minmei did make the statements claimed by defendant, such statements would have had negligible, if any, bearing on her credibility. In other words, even if Minmei had told the police at the time of the robbery that she thought she could identify the perpetrator, at trial she testified that she could not specifically identify defendant as the robber. Further, even if she had told the police that she estimated the perpetrator to be a little taller than defendant actually was, again, Minmei did not specifically identify defendant as the robber during her trial testimony. Moreover, Charles testified that the robber was a bit shorter than himself—a fact that defendant admits. Further, the robber was wearing a surgical mask over his face and the robbery occurred when it was dark outside—clearly making identification details challenging to observe. Under the circumstances, defendant cannot show that his trial counsel's failure to impeach Minmei's trial testimony in this regard fell below an objective standard of professional reasonableness and caused him prejudice. See *Randolph*, 502 Mich at 9; *Hughes*, 339 Mich App at 105.

Next, defendant argues in his Standard 4 Brief that defense counsel was ineffective for failing to impeach the fingerprint expert's testimony with an inconsistency from her report. Defendant asserts that Miller testified that she could not determine from which hand the fingerprint matching defendant came from, but defense counsel had in his possession a report by Miller indicating it was from "#9 digit, left ring." Miller's report was admitted at trial as the prosecution's Exhibit 11; however, defendant did not provide this report to this Court on appeal.

On the second day of trial, on recross-examination, the fingerprint-analysis expert, Miller, was asked if it was possible to tell which hand the partial fingerprint that matched defendant came from. She answered it was not possible with the information that was provided in that impression. Defendant argues in his Standard 4 brief that defense counsel should have impeached Miller based

-13-

on a statement in her report that says, "AFIS: HIT, POSSIBLE SUBJECT DEVELOPED ID DIGIT #9, LEFT RING."[2] Defendant argues that this "grave contradiction" should have been brought before the jury, the prosecution's case was based only on circumstantial evidence, and this inconsistency between Miller's testimony and her report "would had surely brought about a different result in this case." We disagree, and conclude that defendant did not meet his burden in establishing ineffective assistance.

Defendant asserts that defense counsel should have asked Miller if she remembered writing in her report that the print came from a left ring finger, and that he could have refreshed her memory with her report. However, he does not explain how counsel's failure to do this constitutes deficient performance, the first prong of the ineffective assistance of counsel test. See *Randolph*, 502 Mich at 9. Given that Miller testified that there was no way to determine which fingerprint the partial print from the phone case came from, it is not "outside the wide range of professionally competent assistance," *Hughes*, 339 Mich App 105-106 (quotation marks and citations omitted), for defense counsel to fail to ask about a different conclusion indicated in the report in an attempt at impeachment, where Miller's ultimate conclusion would remain the same, i.e., that the fingerprint on the phone case matched defendant's fingerprint. Defendant merely asserts that had the jury known of this inconsistency, the result of the proceeding would have been different. This does not establish prejudice, which is the second prong of the ineffective assistance of counsel test. See *Randolph*, 502 Mich at 9. Miller succinctly testified that one fingerprint lifted from the recovered cell phone case matched defendant's fingerprints already in the AFIS database, and the GPS data retrieved from defendant's phone placed his location in the area of the robbery at the time it occurred. Defendant has not shown that, but for defense counsel impeaching Miller with her report indicating what finger the partial print came from, that the result of the proceeding would have been any different, where the evidence established that one fingerprint matched defendant. See *id*. Therefore, defendant has failed to establish that he received ineffective assistance of counsel in this regard.

Affirmed.

/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett

---

[2] AFIS refers to the Automatic Fingerprint Identification System Miller used in her analysis.